SPENCE v. WIDNEY et al.*

L. A. No. 6; October 16, 1896.

46 Pac. 463.

Trusts—Death of Trustee.—Plaintiff's Testator Granted lands in trust to six trustees, to be sold, etc., with the approval of any four of them, and the fund derived therefrom to be used for founding an astronomical observatory. Before anything had been done to carry out the trust, three of the trustees died. Held, that under Civil Code, sections 2288, 2289, providing that on the death of one of several cotrustees the trust survives to the others, and that the superior court in the county in which the property is situated may appoint other trustees of the trust, the trust did not terminate as impossible of fulfillment.

Trusts—Unreasonable Delay in Carrying Out.—Plaintiff's testator granted land in trust to six trustees, the fund derived therefrom to be used in founding an astronomical observatory in connection with a university. Lenses were ordered, but it was found that the income was insufficient to pay for them. With the consent of the grantor the lenses were sold, and it was decided to wait until prices could be realized for the lands which would enable the trust to be accomplished. Held, that under the circumstances a delay of three years in taking further steps to carry out the trust was not unreasonable.

Trusts—Death of Grantor.—In Such Case the Deed Provided that the observatory should be located on Wilson's Peak, or some other suitable site on the Sierra Madre range, to be selected by the consent and approval of the grantor, who was also one of the trustees. Held, that the death of the grantor before any selection was made did not defeat the execution of the trust.

Trusts—Abandonment.—The Sale of the Lenses and the Delay in selecting a site for the observatory cannot, in the absence of any

*Rehearing granted.

express declaration to that effect, be construed as an abandonment of the trust.

A **Trust for the Founding of an Astronomical Observatory** in connection with a university, "to be owned, controlled, and managed by said university," will not be construed as a trust for a private corporation, and therefore void, in the absence of anything to show whether the beneficiary is an educational institution for the benefit of the public, or conducted for mere private ends.[1]

**Trust for Astronomical Observatory—Perpetuity.**—Nor will the trust be declared void as creating a perpetuity unless it appear that the beneficiary is a mere private enterprise and not a public charity.

APPEAL from Superior Court, Los Angeles County; J. W. McKinley, Judge.

Action by Anna M. Spence, executrix of the last will of E. F. Spence, deceased, against J. P. Widney and others, to set aside a conveyance in trust. From a judgment for plaintiff and from an order denying a new trial defendants appeal. Reversed.

Cochran & Williams (Henry Bleecker of counsel) for appellants; Bicknell & Trask and Chapman & Hendrick for respondent; Albert H. Stephens for intervener.

PER CURIAM.—The plaintiff, as the executrix of the last will of E. F. Spence, deceased, brought this action to have canceled and set aside a certain conveyance made on January 22, 1889, by said E. F. Spence to M. M. Bovard, E. F. Spence, H. Sinsabaugh, J. P. Widney, P. M. Green and R. M. Widney, "as trustees of an express trust," upon the ground that the conveyance was void from the beginning, and the further ground that the purposes for which it was made had been abandoned, and the trusts thereby created had become impossible of execution. The court below found the facts and gave judgment as prayed for, from which, and from an order denying a new trial, the defendants appeal.

The conveyance was of certain lots of land in the city of Los Angeles, to be held in trust as follows: "To sell and con-

---

1 Citing this case as authority it was said in Re Sutro's Estate, 155 Cal. 737, 102 Pac. 923: "But institutions of learning and science may or may not be charitable according as the institution is carried on for public benefit alone or for private gain"; and the court added that a rehearing had been granted in the cited case "but not on this point."

vey or mortgage the same at such time and for such price and on such terms as said second parties, or any four of them, may deem best. The proceeds to be used in purchasing and setting up in first-class working condition the best set of astronomical instruments and telescope that can be purchased with said funds, to be used and known as the 'Spence Observatory of the University of Southern California,' to be owned, controlled, and managed by said university. The rents, income, and profits of said property prior to sale shall be received and collected by M. M. Bovard, one of said trustees, and from same he shall pay taxes, insurance, and such other expenses as may occur in the care and management of said premises, and interest on any mortgage that may be placed thereon. The surplus of said income shall be the property of said M. M. Bovard for his own use and benefit for his services herein. Said observatory to be located on what is known as 'Wilson's Peak,' in the county of Los Angeles, state of California, or some other suitable site in the mountains of the Sierra Madre range, to be selected by the consent and approval of E. F. Spence. In case said property, or the proceeds thereof, shall not be used as herein stated, the said proceeds (except the rents as hereinbefore provided) shall revert to and vest in the said grantor, or his legal representatives.'' The trust thus created was accepted by all of the six trustees and by the University of Southern California. On April 8, 1889, the six trustees, in writing, authorized Alvin Clark & Sons, of Boston, to contract with M. Mantois, of Paris, for the purchase and delivery of lenses for a forty-inch telescope, at the price of 80,000 francs, to be paid as follows: 20,000 francs to be paid when the first lens should be delivered to and accepted by Clark & Sons in Boston; 20,000 francs more when the second lens should be delivered to and accepted by them; and the remaining 40,000 francs one year after the second payment is due; and it was stipulated that there should be no extra allowance for shortening the time on the work, as the trustees preferred that the work should not be hurried.

The first lens was constructed and sent on to Clark & Sons in Boston, and, for the purpose of raising money to make the first payment, the trustees borrowed from the State Loan and Trust Company of Los Angeles the sum of $5,500, for which they gave their promissory note, and a mortgage on the trust property to secure payment of the same. Of the money so

raised 20,000 francs were sent on to Paris to meet the first payment. Subsequently the second lens was completed and sent on to Clark & Sons, and a demand for the second payment was made. There was no money in the hands of the trustees to make that payment, and, to determine what should be done, Dr. J. P. Widney, who was then the president of the university, held a consultation with Mr. Spence. After discussing the matter, and considering the difficulty of then raising more money, it was agreed that the lenses were more expensive than was contemplated by the deed of trust, and that it would be better to sell them, and commence over again, and make such contract as the trust property would carry out. Accordingly, with the advice and consent of Mr. Spence, Dr. Widney notified Mr. Clark that they would not go on with those lenses, but would sell them, and purchase afterward such lenses as the property would pay for. Shortly after this arrangement, on September 19, 1892, Mr. Spence died, and prior to his death two of the other trustees, M. M. Bovard and H. Sinsabaugh, had died. The three surviving trustees, on November 19, 1892, sold the lenses to the University of Chicago for a considerable sum over what had been expended for them, and with the money received they paid, among other things, the note and mortgage to the State Loan and Trust Company. During the lifetime of Bovard and Spence the business of the trust was managed largely by them, but mainly by Bovard. After the death of Spence the surviving trustees continued in possession of and cared for the trust property, paying taxes and insurance, and awaiting a favorable opportunity to sell it to the best advantage before taking steps to contract for new lenses and otherwise carry out the trust. On September 7, 1893, the plaintiff commenced this action against the three surviving trustees and the University of Southern California. At that time the places of the deceased trustees had not been filled, the trust property had not been sold, and no definite site for the location of the observatory had been selected. The case was tried in March, 1894, and the court found, among other things, "that the accomplishment of the objects set forth in said trust deed had become impossible, and that said objects and purposes have long since been abandoned, and nothing whatever has been done toward the execution of the said trust for more than three years." It is upon this finding that the judgment rests. This finding

is assailed as not justified by the evidence, and whether it is so justified or not is the prin 'pal question presented for decision.

1. After a careful inspection of the record, we are unable to find any evidence which, in our opinion, can be said to justify the finding that the accomplishment of the objects of the trust had become impossible. It is true that three of the six trustees were dead, and that the deed required the concurrent action of at least four. But sections 2288 and 2289 of the Civil Code provide that on the death of one of several cotrustees the trust survives to the others, and that the superior court of the county where the trust property is situated may appoint other trustees, and direct the execution of the trust. And section 2268 of the same code provides that, where there are several cotrustees, all must unite in any act to bind the trust property, unless the declaration of trust otherwise provides. Here the deed did provide that a less number than all might act, and when it was made the grantor must be presumed to have known the law, and also that some of the trustees named might die, and, if so, that their places would be filled by the court, with power in the new board to discharge the duties imposed on the original appointees. And in the provision of the deed we see nothing to indicate that the grantor intended to or did confer upon the trustees named by him any discretionary powers of such a personal character that they could not be exercised by trustees appointed by the court. And the fact that no steps had been taken to have new trustees appointed certainly does not show that the execution of the trust had become impossible. There does not appear to have been any immediate necessity for filling the vacancies, as the three remaining trustees were able to manage and look after the property and were not then ready to sell or mortgage the same.

It is also true that the big lenses had been sold, and the trust property had not been sold, and no new lenses had been contracted for. It appears that the lenses were sold with the consent and approval of the trustor. No definite time was fixed for the sale of the property or the erection of the observatory, and, under the circumstances shown, the delay does not seem to have been unreasonable. So, too, it is true that the observatory had never been located on Wilson's Peak, and no other site for it was ever selected "with the consent and

approval of E. F. Spence," and it does not appear that the trustees had acquired any right to establish an observatory on Wilson's Peak, or on any suitable site in the mountains of the Sierra Madre range. But it does not follow that a suitable and desirable site for the observatory on Wilson's Peak may not yet be selected, and the right thereto acquired. The suggestion of counsel for respondent that there is room enough on that peak for the establishment of "one hundred and fifty to five hundred observatories" only tends to show that there can be no great difficulty in acquiring a site. So the suggestion that, in the absence of a showing to the contrary, all the land on the peak must be presumed to be government land, is no valid argument in support of respondent's position; for, if true, it would seem to be by no means impossible to acquire a site. But, assuming that the location cannot be made on Wilson's Peak, still it does not follow that a suitable site cannot be selected and used on some one of the adjacent peaks. The fact that Spence died before the selection, and therefore it cannot be made with his consent and approval, will not defeat the execution of the trust. When a trust exists, and all the trustees are dead, the court will appoint other trustees, and direct the execution of the trust (section 2289, Civil Code), and in a case like this another site may be selected by the consent and approval of the court.

2. The next question is, Had the objects and purposes of the trust been abandoned? We find no evidence in the record tending to show that they had. Under our code "a trustee must fulfill the purpose of the trust, as declared at its creation, and must follow all the directions of the trustor given at that time, except as modified by the consent of all parties interested": Civ. Code, sec. 2258. And, as such trustee, he has no power to abandon a trust, except as declared therein, for he is "a general agent for the trust property," and "his acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal" (section 2267) ; and every act of the trustee, in contravention of the trust, is absolutely void: Sec. 870. "A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued": Sec. 2280. The law seems, therefore, to be well settled that a trustee can-

not abandon a trust without the consent of the cestui que trust, for, as said in Perry on Trusts (section 268, fourth edition) : "If a person has once accepted the office, either expressly or by implication, it is conclusive; and he cannot afterward, by disclaimer or renunciation, avoid its duties and responsibilities." Aside from the fact that the trustees had sold the large lenses which were first made, and had delayed to select a site for the location of the observatory and to contract for other lenses, there is no evidence showing that they ever intended to or did abandon the trust. On the contrary, the evidence is clear and undisputed that they had at all times intended to go ahead with the work, and were waiting only for a favorable time and circumstances to accomplish the end proposed. So, also, there is no evidence showing that the university, as beneficiary, ever consented to the abandonment of the trust. On the contrary, the only evidence introduced upon the subject is that it never did so consent, but insisted and relied upon its execution, and that when this action was commenced it employed counsel to defend it.

3. Respondent contends that the deed is void ab initio, because the trust created thereby is a mere private trust for the benefit of a corporation, and not a trust for charity. It is well established that a trust for the promotion of education or science, such as the establishment of a school or a chair in a university, is a trust for charity, as that term has been interpreted in modern jurisprudence: Jackson v. Phillips, 14 Allen, 539; Perry on Trusts, sec. 687; Pomeroy's Equity Jurisprudence, sec. 1023. This does not embrace, however, trusts for the benefit of such institutions as are strictly private, and conducted for mere private gain (Pomeroy's Equity Jurisprudence, sec. 1023) ; but the institution must be public, or for the benefit of some portion of the public (Attorney General v. Soule, 28 Mich. 153). In this case the trust is to establish with the proceeds of the trust property an observatory, "to be used and known as the 'Spence Observatory of the University of Southern California,' to be owned, controlled, and managed by said university." But there is an entire absence from the pleadings, and findings as well, of anything to indicate the character or purposes of the beneficiary, other than that to be inferred from its name, excepting only the fact that it is a corporation duly incorporated under the laws of the state. Whether it is a school or educational institution,

and, if so, whether it is for the benefit of the public, or run for mere private ends, nowhere expressly appears. That it was such an institution as would support the trust seems to have been tacitly conceded in the court below, and the point that it is not such is made here for the first time. But, as there is nothing in the record from which the fact is made to appear, and as we are aware of no presumption for or against the competency of the beneficiary to take the use, the question of the validity of the deed in this respect cannot be determined upon this record. The question, however, being one upon which the validity of the deed may turn, it will be the duty of the court below upon another trial to find expressly upon the fact. Since trusts are not favored in the law, the burden will be upon the party seeking to sustain the trust to show that it is within the exception of the statute.

4. The further contention that the deed is void because the accomplishment of the trust would require the creation of a perpetuity, is fully met, if the beneficiary shall be found to be a charity, by the decision in Re Hinckley's Estate, 58 Cal. 457, where it was held that trusts for perpetual charitable uses are not in conflict with the constitution of the state, nor with those provisions of the Civil Code which prohibit perpetuities; and, further, that perpetuities prohibited by the common law do not include trusts for charitable uses. And see In re Robinson's Estate, 63 Cal. 620; People v. Cogswell, 113 Cal. 129, 35 L. R. A. 259, 45 Pac. 270.

The judgment and order are reversed and the cause remanded for a new trial.

Beatty, C. J., not participating.

McFARLAND, J.—I dissent. I see no sufficient reason for disturbing the judgment. Waiving the point made by respondent that the alleged trust was void from the beginning because it is not taken out of the category of perpetuities by being a charity, and other points going to its intrinsic invalidity, I think that the findings that the accomplishment of the purposes of the trust has become impossible, and that said purposes have been abandoned, are just conclusions from the facts. In fact, the evidence does not present a single existing monument to mark any effort to carry out the purpose of the trust; and, so far as the accomplishment of that purpose is concerned, the situation is the same to-day as it was the day

Mr. Spence executed the deed. All that the trustees have apparently done has been to collect the rents from the trust property, and take care of said property, and to make some money on the purchase and sale of a couple of lenses—which money does not seem to be now on hand. Shortly after the execution of the deed—on April 8, 1889—the trustees authorized Clark, of Boston, to contract with a party in Paris for disks for a forty-inch telescope at a certain price, part payments to be made at different times. In order to make the first payment, the trustees mortgaged the trust property to the State Loan and Trust Company. When the second payment became due there was no money to meet it. Two lenses were then in the possession of Clark, of Boston. Nothing was done toward making the second payment. It was apparent that the trust property was not of sufficient value to carry out the scheme, which contemplated one of the largest telescopes ever made. One of the witnesses, who was a trustee and president of the university, testified that he asked Mr. Spence if it would not be better to sell the lenses, and commence again with such a contract as the property would carry out; and that he said, "I think it would." But before his death he wrote a letter to the said witness, in which is the following: "In a conversation once had with you regarding the sale of the glass, it was my mind always that the purchasers should erect it somewhere near here. I fear that you did not so understand it. When I deeded the property, I hoped, of course, that I would have nothing more in the way of business to attend to except to designate the site. It seems now that the trustees will have trouble in raising the money to pay for the glass, something like $18,000. I would not be satisfied with any smaller glass in connection with the university. If Raymond, Lowe or Clark would guaranty to erect it upon some one of our peaks, I think I would favor liberal terms with either of those men. If you think none of these points are advisable, it might be well to redeem the property back to me, and I will pay the price of the glass as per contract, and await further developments or future combinations, whereby we may yet be successful in securing for the university that object which we have so long cherished." Nothing further was done before his death; and about two months after that event the three remaining trustees, or one or more of them, sold their interest in the lenses which had arrived in Boston

to the Chicago University for $9,500, and closed out the contract which Clark had made for them. With part of this money they satisfied the mortgage given to the State Loan and Trust Company; so that they then stood as they did at the beginning, except that, as they had paid only $3,912 on the lenses, they made a profit on that transaction. The three remaining trustees have taken no further steps to carry out the purpose of the trust; they have not asked to have other trustees appointed; they have selected no site; they have, as the testimony of one of them shows, admittedly abandoned Wilson's Peak as a site, because there is no road there, and to either construct a road or to transport materials by a bridle-path would be impracticable. The most that can be said on the subject in their behalf is that perhaps at some indefinite period in the future, if the trust property shall become more valuable, and Professor Lowe shall complete a railroad to the summit of another mountain, they might possibly erect some kind of an observatory at some point on the latter mountain.

Moreover, how can this trust be now executed so as to carry out the purpose of the trustor? The clear purpose was to erect a first-class observatory. This is apparent from the language of the deed and from the acts of the parties. The trustees recognized that purpose when they entered into a contract for the purchase of lens for a forty-inch telescope—said to be larger than any heretofore constructed; and the trustor declared that he would not be contented with a smaller one, and suggested that the property be deeded back to him. It was found that the trust property was entirely insufficient in value to accomplish that scheme. Again, the site was to be approved by the trustor; and that is impossible, for he is dead. Furthermore, special confidence was evidently placed in the persons named as trustees, of whom the trustor himself was one, and the concurrence of four of them was necessary to important and essential acts, and particular powers were given to Trustee Bovard; but three of the trustees, including Bovard, are dead, and there are not four left.

It is contended that at least one of the difficulties caused by the death of the trustees may be obviated under section 2287 of the Civil Code, which provides that the superior court may appoint a trustee when there is a vacancy, and the declaration of trust provides no method of appointment. That section is a mere statement of the power which courts of equity have

always exercised in proper cases. A court of equity will not allow a trust to fail solely for want of a trustee; that is, if the purposes of a trust and the wishes of a trustor can be carried out by the appointment of a trustee, the court will make such appointment, even though no trustee at all had ever been appointed by the trustor. But where, as in the case at bar, the trustor has himself selected the persons who are to execute the trust, and has evidently placed special personal confidence in them, with a reasonable expectation that the material parts of the trust would be executed during their lives, and no steps have been taken toward such execution, and no equitable rights have grown up under their acts, there a court will not undertake to substitute strangers for the chosen agents of the trustor. In Re Hinckley's Estate, supra, this court said: "If it is determined that a peculiar personal trust and confidence were intended, new trustees will not be appointed," citing authorities. "In such cases the appointment of new trustees is refused when it appears from the will that the testator intended that none but the persons by him named should be intrusted with the power." And in the case at bar all the circumstances point to a personal confidence reposed in the persons selected to carry out the trust. The fact that no successors were provided for is itself significant, although, of course, not conclusive; but there can be no doubt that such special confidence was reposed in at least two of the trustees— Bovard and the trustor himself—and they are both dead. Would a court undertake to substitute strangers for these two, when there are no equities in favor of the named beneficiary, or any other person, arising out of any valuable consideration? It must be remembered that this was a purely voluntary trust, and that no complications have arisen by any attempt to execute it. Moreover, under such circumstances, where the purposes of the trust have failed, and cannot be accomplished according to the intent of the trustor, new trustees will not be appointed to carry out some plan other than the one which he designed. In such case the property reverts to the trustor or his estate: 1 Perry on Trusts, sec. 160; Easterbrooks v. Tillinghast, 5 Gray (Mass.), 21; Keith v. Copeland, 138 Mass. 303. And, as we have before stated, no observatory such as the trustor contemplated can be erected, and no site can be selected in the manner provided by the deed.

Under the foregoing views, other findings assailed by appellants are immaterial. In my opinion, the judgment and order appealed from should be affirmed.