In the Matter of the Estate of Charles H. Rogers, de-
ceased.    Appeal of Charles R. Rogers, Frank G. Rog-
ers and William Rudolph Smith.

*Will—Power of sale—Trusts and trustees.*

Testator after making provision for his family by life estates and be-
quests directed that the residue of his estate should be used in establish-
ing a charitable institution, and directed that his mansion house should be
used for that purpose.    Owing to a great shrinkage in his estate his in-
tent to found a charitable institution failed.    By his will he gave to his
executors and trustees power to sell " any or all of my real estate " when
they should think it for the best interest and benefit of his estate.    Certain
of his children petitioned the orphans' court to direct the trustees to sell
the mansion house, which was an unproductive property, in order that the
proceeds of the sale might be invested and the income therefrom distrib-
uted to testator's children.    *Held*, that it was proper for the court to direct
the trustees to sell the property.

Argued March 29, 1898.    Appeal, No. 429, Jan. T., 1897, by
Charles R. Rogers et al., from decree of O. C. Phila. Co.,

April T., 1895, No. 151, directing trustees to sell real estate. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition to sell real estate.

The petition was filed by Mary Rogers, Martha T. R. Weightman and Caroline R. Buehler, daughters of Charles H. Rogers, and who, together with three of the trustees, Charles R., Harry and Frank G. Rogers, are the only living children of the decedent.

The petition, after describing the real estate sought to be sold, continued as follows:

By his last will the said decedent appointed his sons, Charles R. Rogers, Harry Rogers and Frank G. Rogers, and George C. Thomas and John S. Newbold, executors and trustees. The said George C. Thomas subsequently resigned the trust. The said John S. Newbold afterwards departed this life, and William Rudolph Smith was appointed by your honorable court trustee in the place of John S. Newbold, deceased, and the present trustees of said will are the said Charles R. Rogers, Harry Rogers, Frank G. Rogers and William Rudolph Smith.

By the terms of his will the said Charles H. Rogers, after directing the payment of his just debts and funeral expenses, gave all the residue of his estate to said trustees: first, to pay certain annuities amounting to $1,800 a year and a life estate to a sister and a daughter in two certain pieces of his real estate; and he further provided as follows: Concerning the house and grounds wherein he resided (and being the premises in this petition before mentioned and described), he directed that his wife, Julia A. Rogers, should be permitted to occupy the same with all the furniture, library and everything therein contained during the term of her natural life, and did further provide that the sum of $25,000 per annum should be paid to her during her life, in satisfaction of her dower in his estate. In regard to the same he further provided, that

"After the death of my said wife, it is my wish and desire that my said son, Charles R. Rogers, and my daughters that shall be then single and unmarried, shall occupy and use my said house and grounds wherein I now reside, and all the furni-

ture, library and everything therein contained, and all the horses and carriages in use at the time, free of rent or other charges, therefor, and for the purpose of running the said house and paying the expenses thereof, as long as they or the survivors or survivor of them shall remain single and unmarried, and shall elect to occupy and use the same, I authorize and direct my said executors to appropriate and pay over out of the income of my estate, to such of them as shall remain single and unmarried and continue to occupy said premises and not otherwise, the sum of ten thousand dollars per annum, or so much thereof as may be necessary, but not to exceed that sum, in quarter yearly payments for the purposes aforesaid: provided, however, that in case either or any of my said last named son and daughters shall marry, then his, her or their right to occupy and use the said premises, shall cease and end, as it is my will that no son-in-law either present or future shall at any time hereafter, reside in or occupy the same. And provided further that in case it shall not be agreeable for them, or such of them as shall remain single and unmarried to continue to occupy and use the said premises, then it is my will, that my said executors shall dispose of, and distribute the said furniture and library in such way and manner as I may at some future time direct."

Testator further provided that after the payment of legacies and annuities by him given and the yearly sum to his wife, one third of the clear annual income of the estate should be set aside and accumulate until the whole should amount to a sum not exceeding $400,000, which should be held by his executors to meet the losses of his estate, and that the interest or income of said accumulated fund should go into and form a part of the general income of his estate, and that after the said contingent fund of $400,000 had been raised, the whole income of the estate should be divided amongst the children. The decedent provided, however, that it was his will that in no event should either or any of his said children receive annually a less sum than $6,000 out of the said income of his estate.

Testator made this final disposition in favor of his descendants :

"And upon the further trust that upon the death of the survivor of my said above-named children, to pay over and I do

give and bequeath unto each of my grandchildren living at that time the sum of fifty thousand dollars."

He then directed as follows :

" Upon the death of the survivor of my said children, and the payment of all the legacies hereinbefore given and bequeathed and upon the death of all the annuitants above named or the payment of the principal of all annuities where the annuitants shall happen to be then living as aforesaid, then the said trustees and their successors in the trust shall at all times hereafter forever, hold all the said rest, residue and remainder of my estate and the income thereof ; for the purpose of establishing and maintaining a home for old and infirm white men and women as hereinafter mentioned and expressed, that is to say, that it is my intention and I hereby authorize, empower and direct the trustees under this my will to establish a home for old and infirm white men and women of good moral character born and residing in the city and county of Philadelphia, who have no means of support, and for that purpose to set apart and hold forever, all that my said mansion house wherein I now reside, and the thirty-six acres more or less of land thereunto belonging, situate on the Old York Road in the Twenty-second ward of the city of Philadelphia, with full power and authority for them and their successors to alter and add wings to the said mansion house and so alter and change the same as to make and provide a comfortable and proper home for such old persons who shall be admitted to the said home, and to erect and build such other building or buildings as they in their good judgment and discretion shall think right and proper, and all management and rules for management shall be vested in the said trustees.  The said home shall be known as the ' Rogers Home for old and destitute white men and women,' my wish and desire is that whenever a man and his wife, both old and infirm, and of good moral character, which must in all cases be, shall be admitted to said home, they shall be provided with such apartments so as to make the latter part of their days on this earth as comfortable and happy as possible, and in case of the death of any of the inmates of the said home, at any time, there shall be set apart a certain part of the said land as a burial place for any one dying wherein they shall be properly interred."

At the time of the death of the testator the
appraised value of his personal estate
amounted to                                $1,397,737 84
The present assessed value of his entire
real estate is                               193,500 00
Making the total amount of his estate at
the time of his decease                    $1,591,237 84

Testator's widow, Julia A. Rogers, elected to take against
the will, and there was awarded to her on the adjudication of
the executor's account the sum of $439,881.94 out of the per-
sonal estate.

On proceedings duly had in your honorable court, the direc-
tion to accumulate the sum of $400,000 for a contingent fund
was decided to be void.   Testator, at the time of his death, was
possessed of certain stocks, the value of which have fallen con-
siderably, and in consequence of the failure of the testator's
plans as to accumulation and as to the preservation of his whole
estate from distribution to his widow, and in consequence of
the depreciation in value between the appraised value of his
personal estate at the time of his death and the present value
thereof, the present condition of the estate is as follows :

Personal estate, consisting of stocks, bonds
and mortgages (estimated at their market
value),                                    $511,957 25
Real estate, assessed for city taxation, at  193,500 00
Furniture, works of art, books, etc., in man-
sion house,                                  29,798 25

Total,                                     $735,255 50

There are six children of decedent living, all of lawful age,
to wit: three daughters, your petitioners, and three sons, the
said Charles R. Rogers, Harry Rogers and Frank G. Rogers,
executors and trustees named in said will.

Julia R. Palmer, another of said children, departed this life
on September 6, 1897, leaving to survive her the children here-
inafter named.

The following is a list of the names of all of the living grand-
children of the said Charles H. Rogers, deceased, as well those
of lawful age as those who are minors, viz :

Charles H. Rogers and Gladys D. Rogers, children of the said Charles R. Rogers, both minors under the age of fourteen years, and for whom Alfred J. Fortin has been appointed by your honorable court, guardian ad litem.

The children of Julia R. Palmer are Frank J. Palmer, Harold Palmer, Reginald Palmer and Norman Palmer, all of lawful age, and Phebe Palmer, a minor over fourteen years of age, for whom Mary Rogers has been appointed guardian.

The children of Martha T. R. Weightman are Malcolm R. Weightman, of lawful age, and Aubrey H. Weightman, a minor over fourteen years of age, and for whom the said Alfred J. Fortin has been appointed guardian ad litem.

The children of Frank G. Rogers are Sidney H. Rogers, a minor over fourteen years of age, and Frances Rogers and Caryl B. Rogers, minors under fourteen years of age, for whom Alfred J. Fortin has been appointed guardian ad litem.

Malcolm R. Weightman is married and has one child, namely, William Weightman, 3d, a minor under fourteen years of age, and for whom the said Alfred J. Fortin has been appointed guardian ad litem.

All of said children are married with the exception of Mary Rogers, who has been occupying up to the present time the mansion house and ground situate on Old York Road, and to whom the trustees have been paying the sum of $10,000 a year for the purpose of running the said house and paying the expenses thereof in accordance with the will of the testator. After the payment to this daughter, and after payment of the annuities charged by the will on the estate, the total income for the year 1896 to each of the children was $2,005.08.

The assessed value of the mansion property and the thirty-six acres of ground surrounding the same is $115,000.

Testator provided further as follows:

"Item, I hereby authorize and empower my said executors and trustees, or the survivors or survivor of them or their successor or successors in the trust at any time or times hereafter if they shall think it for the best interest and benefit of my estate and not otherwise, or for the final settlement thereof, to sell and dispose of any or all of my real estate, either at public or private sale, and upon receipt of the purchase monies, therefor, to make, execute and deliver to the purchaser or purchas-

ers thereof, good and sufficient deed or deeds of conveyance therefor, without any such purchaser or purchasers, being bound or obliged to see to the application, non-application, or misapplication of the purchase monies or any part thereof, and to invest such purchase monies (if any sale or sales shall be made before the final settlement of my estate) in the legal securities hereinbefore mentioned, and to hold the same upon the trusts and for the uses and purposes contained in this my will."

Mary Rogers, one of the petitioners herein, has expressed her intention of vacating said mansion house and lot of ground, and your petitioners have requested the said executors and trustees Charles R. Rogers, Harry Rogers, Frank G. Rogers and William Rudolph Smith to sell the property and invest the purchase money for the purpose of increasing the income to your petitioners and the other children of said Charles H. Rogers, deceased, and after their death holding the principal thereof for the trusts of testator's will. The trustees have replied to this request by stating that in their judgment they deem it for the best interests of the estate to make sale of the premises, and they would make said sale saving for the fact that they are doubtful as to their authority to do so under the terms of testator's will. For this reason and this reason alone, they decline to make said sale, saying that they will deem it their duty to sell and that they will sell, if your honorable court shall declare that they have the power so to do.

Your petitioners further pray your honorable court to cite the trustees to appear and make answer whether they do decline to sell said premises solely because they are in doubt as to their powers to do, and if upon their answer it shall appear that they do decline for said reason only, then to order such sale, and in support of their application they offer the following reasons :

Your petitioners are advised that there is no immunity or exemption from sale inhering in the title to the mansion house and thirty-six acres of ground before mentioned, but that a sale of the premises at this time with the purchase money held upon the same trusts would best carry out the real intentions of the testator.

Your petitioners submit that the primary intent of the testator was to establish a home ; that his secondary intent was to establish that home in the mansion house in which he resided

and the thirty-six acres of ground more or less thereunto belonging. The condition of the estate as herein set forth, your petitioners feel clearly demonstrates that this secondary intent has failed. At the present time, were all the children deceased, after payment of $600,000 in legacies to the grandchildren, the whole personal estate, and practically all of the real estate, save this mansion house and property would be exhausted; if, therefore, the trustees and executors would retain the same, it would be absolutely impossible for them to carry out the provisions of the will for the establishment of the home at this place. There would be a home without any means of maintaining the same or supporting the occupants. Your petitioners respectfully submit that a state of affairs has developed in this estate which establishes that the home must be sold in the end. That it would be a great hardship on the children of decedent if the trustees are compelled to maintain this property at a considerable expense to the estate in the hope that possibly a sufficient number of grandchildren will die to permit an appropriation of a fragment of the estate in the future to the appropriation to a home. Your petitioners further show that the testator clearly had his children in mind as the primary objects of his bounty when he expressed his thoughts in these words in his will:

"And it is my will, however, that in no event shall either or any of my said children receive annually a less sum than six thousand dollars out of the said income of my estate."

The children after the extinguishment of the $10,000 annuity now paid to Miss Mary Rogers, will receive barely $3,500 per annum. A sale of the mansion property might add from $800 to $1,000 to the income of each, yet they would still be in receipt of a much smaller sum than was contemplated by the testator.

Your petitioners further show that the mansion house upon the property is a very large one, most expensively built, having twenty-two rooms, exclusive of bath rooms, and the whole exterior of the grounds surrounding to be kept in order consistently with the mansion house involves a large expenditure of money; that by reason thereof, and by reason of other surroundings, the property today would not bring a rental in any way commensurate with the interest on the purchase money of the entire tract if sold; that the real value of the property today con-

sists in the grounds divided up, and that sooner or later city streets will be cut through the property.

That all of the cestuis que trustent, under said will, have knowledge of these proceedings, and are desirous that a sale of the premises should be consummated, as is evidenced by their answer to that effect hereto attached; those who are minors being represented by their said guardians ad litem.

Your petitioners attach to this petition affidavits of S. Kingston McKay and Henry R. Gummey, two experienced men in the real estate business in Philadelphia, as to the proportionate value of rental and sale of the property. A certificate of the board of revision of taxes of the assessment of the property for taxation is hereto annexed.

In view of the existing circumstances and the power of sale vested in said trustees, and on the information that your petitioners have received that the trustees have expressed themselves as being of the opinion that it would be for the best interests of the estate that a sale should be made, your petitioners pray your honorable court to direct said trustees to sell said mansion house and all of said thirty-six acres of ground, more or less, thereunto appertaining and belonging, at either public or private sale, as a whole or in parcels, as to them shall seem meet, if it shall appear that they deem such sale should be made, but decline solely because of their doubt.

The court made the order prayed for by the petition.

*Error assigned* was the decree of the court.

*William Rudolph Smith*, for appellants, presented no argument, but stated that the trustees did not think it wise to make the sale until their power to do so had been judicially determined by the Supreme Court.

*Charles Biddle* and *John G. Johnson*, for appellees.

PER CURIAM, April 11, 1898:

Undoubtedly it was for the best interest of the estate of the decedent that the decree of sale of the property in question should be made. It is perfectly clear also that the power of sale conferred upon the executors and trustees by the will of the testator was amply sufficient to justify the sale by them. It em-

braced the whole of the testator's real estate of which this property was a part, and the learned court below was entirely right in granting the order.

Decree affirmed and appeal dismissed.