[Civil No. 2365.   Filed October 9, 1925.]

[240 Pac. 280.]

# CONSTANCE S. LOWELL, Appellant, v. GUY LOWELL, as Trustee Under the Will of PERCIVAL LOWELL, Deceased, Appellee.

1. EXECUTORS AND ADMINISTRATORS—ORDER DENYING PETITIONER'S HEIRSHIP OF TESTATOR'S ESTATE HELD APPEALABLE, THOUGH MADE ON HEARING OF PETITION FOR FINAL SETTLEMENT AND DISTRIBUTION.—Order denying petitioner's heirship to whole of testator's estate, and sustaining legality of trust in favor of another, *held* appealable, in view of Civil Code of 1913, paragraphs 1036–1039, though it was made on hearing of petition for final settlement and distribution, notwithstanding paragraphs 1032–1035, authorizing determination of heirship, before final order of distribution.

2. WILLS—RULES OF CONSTRUCTION APPLICABLE IF WILL IS AMBIGUOUS —UTTERANCES OF WILL ACCEPTED BY COURTS IF NOT AMBIGUOUS.— If will is ambiguous, rules of construction may be employed in an effort to ascertain its true meaning; if not ambiguous, and not reasonably susceptible of more than one interpretation, and that interpretation may be gathered from instrument itself its utterances must be accepted by the court, though it may defeat the will of testator.

3. STATUTES—CONSTRUCTION PLACED ON STATUTES ADOPTED FROM ANOTHER STATE BY HIGHEST COURT OF THAT STATE IS ALSO ADOPTED. Where statute adopted from another state had previously been construed by the highest court of that state, such construction is also adopted.

4. PERPETUITIES—GIFT IN PERPETUITY FOR CHARITABLE USE LAWFUL.— Personal property may be given in perpetuity for a charitable use.

5. PERPETUITIES—POWER OF ALIENATION NOT SUSPENDED WHERE PERSON IN BEING CAN CONVEY.—The power of alienation is not suspended as long as there is some person in being who can convey.

6. PERPETUITIES—GIFT IN TRUST FOR USE OF OBSERVATORY, WITH POWER TO SELL, HELD NOT VOID.—Testator's gift of all his residuary estate, both real and personal, in trust for use of as-

---

2. Law governing construction of wills, see note in 2 L. R. A. (N. S.) 443. See, also, 28 R. C. L. 205.

3. See 25 R. C. L. 1069.

tronomical observatory, *held* to give trustees present right and power to sell same, which right and power to sell extended to realty upon which observatory was situated, no less than to rest of realty, and hence gift was not void as creating a perpetuity, in violation of Civil Code of 1913, paragraphs 4679, 4680, 5555.

7. PERPETUITIES—TRUST FOR USE OF OBSERVATORY HELD NOT TO FORBID SALE OF SITUS.—Testator's gift of all his residuary estate in trust for use of astronomical observatory, providing that a certain part of net income of such property should be used for carrying on study of astronomy at observatory's then location, and at such other places as may from time to time be convenient, *held* not a mandate that observatory should remain perpetually in its then location and that sale of its situs should be interdicted for all time.

8. PERPETUITIES—TRUST FOR USE OF ASTRONOMICAL OBSERVATORY HELD NOT TO MANIFEST INTENTION TO SUSPEND POWER OF SALE.—Testator's gift of all of his residuary estate in trust for use of astronomical observatory, providing that his wife might have right to live in and enjoy a house at observatory during her life, *held* not to manifest an intention to suspend power of sale of observatory property, but to be no more than a limitation upon its use.

9. CHARITIES—TESTATOR'S GIFT OF ALL RESIDUARY ESTATE IN TRUST FOR USE OF OBSERVATORY HELD TO CREATE A CHARITABLE TRUST.—Testator's gift of all his residuary estate in trust for use of an astronomical observatory, *held* to create a charitable trust.

10. CHARITIES—STATE COURTS HAVE JURISDICTION TO CONTROL ADMINISTRATION OF TRUST, CHARITABLE AND PUBLIC IN ITS NATURE.—State courts, by virtue of their common-law and equity powers have jurisdiction to supervise and control administration of a trust, charitable and public in its nature, and to prevent its misuse or abuse and enforce its execution.

See (1) 24 C. J., p. 534. (2) 40 Cyc., p. 1390. (3) 36 Cyc., p. 1154. (4) 30 Cyc., p. 1497 (Anno.). (5) 30 Cyc., p. 1482. (6) 30 Cyc., p. 1496. (7) 30 Cyc., p. 1496. (8) 30 Cyc., p. 1496. (9) 11 C. J., p. 320. (10) 11 C. J., p. 356.

APPEAL from a judgment of the Superior Court of the County of Coconino. J. E. Jones, Judge. Affirmed.

9. Validity of gift for the promotion of educational or literary purposes, see notes in 14 L. R. A. (N. S.) 97; 37 L. R. A. (N. S.) 1006. See, also, 5 R. C. L. 330.

Mr. Richard E. Sloan, Mr. C. R. Holton, Mr. Greig Scott and Mr. Frank Harrison, for Appellant.

Messrs. Cornick & Crable, for Appellee.

ROSS, J.—This is an appeal from a probate order approving the validity of Dr. Percival Lowell's will. The appellant is Dr. Lowell's widow and only surviving heir, and, had he died intestate, would have inherited the entire estate. He died on November 16, 1916, at Flagstaff, Arizona, of which place the record shows he was at the time a resident. By his will, dated February 21, 1913, he gave to appellant $150,000, all his personal and household effects, automobile, and an annuity of $60,000. Later by codicil this gift was changed to $175,000, personal and household effects, automobile, and forty-five per cent of the net income of the estate; the latter being in lieu of the $60,000 annuity. The residuary estate he gave to William Lowell Putnam in trust for the Lowell Observatory.

The estate appraised at approximately $2,000,000, and consisted principally of moneys, stocks, bonds, and securities; the only real property being a residence in Boston, Massachusetts, the land and premises on which the Lowell Observatory is situate near Flagstaff, Arizona, and a house and two lots in the said town of Flagstaff; the Arizona property being appraised at $32,500.

By the terms of the will, appellant and William Lowell Putnam were appointed executors, without bond. The other named executor (William Lowell Putnam) did not qualify. The will was duly probated on appellant's petition and letters testamentary issued to her as the sole executor thereof. In due course, and on November 15, 1920, appellant filed her petition for a final distribution of the estate, and in

said petition set up the claim that the trust in favor of the Lowell Observatory was illegal as in violation of our statutes against perpetuities, and asked that all of the remaining estate in her hands be distributed to her as the widow and sole heir at law of the deceased.

The appellee, Guy Lowell (who had under the terms of the will become the trustee), by proper pleadings resisted the prayer of the petition and insisted that the gift to the Lowell Observatory was for a charitable use and not in contravention of the laws of Arizona; also pleaded that the question of the legality of the trust was *res judicata*.

On July 8, 1924, the court made its order sustaining the contention of the trustee, and held that the will was operative and lawful. In the same order appellant was directed to file a supplemental final account and report, and, upon the approval thereof, she was directed to distribute the residuum of the estate to appellee, Guy Lowell, trustee. It is from that part of the order denying appellant's heirship to the whole estate and sustaining the legality of the trust in favor of the Lowell Observatory that the appeal is taken.

The appeal was attempted to be prosecuted by the appellant, both in her official capacity and as heir. Upon motion of appellee, the appeal by the executrix was dismissed on the ground that she was not aggrieved in her official capacity by the court's order. The appeal is therefore by her as heir.

Some question is made as to the appealability of the order because of its being made upon a hearing of the petition for final settlement and distribution. Under the statute, heirship may be established by proceedings before the final distribution is ordered (paragraphs 1032–1035, Civ. Code 1913), and ordi-

narily this method would be the natural one to follow. But in subsequent provisions the statute (paragraphs 1036–1039) confers jurisdiction upon the court to determine heirship upon the hearing of petition for final distribution. It seems clear enough that the order sustaining the trust in favor of the Lowell Observatory, and denying appellant's heirship to the residuary estate, was appealable.

We pass to a consideration of the question of the validity of the trust. If it is valid the order was correct; otherwise, erroneous.

It is the contention of the appellant that the will as written must be construed; that, while the testator does not say therein, in so many words, that the Flagstaff realty upon which the observatory is situate must be kept by the trustee in perpetuity and maintained as the permanent and perpetual home of the observatory, a reasonable, fair, and just construction thereof inevitably leads to that conclusion. On the contrary, the appellee insists that the will is not subject to construction at all; that it is written in language so clear and plain of meaning that the intent of the testator cannot be mistaken, and that to invoke rules of construction in such case would be an unheard of proceeding.

The correctness of the conclusions drawn by the parties depends upon the validity of their premises. If the will is ambiguous, rules of construction may be employed in an effort to ascertain its true meaning; if it is not ambiguous, and not reasonably susceptible of more than one interpretation and that interpretation may be gathered from the instrument itself, its utterances must be accepted by the courts. And this is so, even though it may defeat the will of testator, *a fortiori,* if it results in carrying out his intention.

Although we have already given a summary of Dr. Lowell's will, because of the respective contentions, as also because of its brevity, its preciseness of expression and perspicuity, we set it out, omitting informal parts and two of the codicils which are unimportant in the consideration of the case:

"I, Percival Lowell, of Flagstaff, Arizona, make this my last will and testament.

"First. I appoint my wife, Constance S. Lowell, and my brother-in-law, William Lowell Putnam, executors, and desire that no bonds be required of said executors or of any administrator with the will annexed, or of any trustee under this will.

"Second. I authorize my executors to sell any property, real or personal, without the leave of any court.

"Third. I give to said Constance S. Lowell the sum of one hundred and fifty thousand ($150,000) dollars and all my personal and household effects and my automobile.

"Fourth. All the rest and residue of my property I give to my brother-in-law, William Lowell Putnam, to be held, subject to the provisions hereinafter made for my wife, in trust for the Lowell Observatory. The property shall be invested. Ten (10) per cent of the net income shall be added yearly to the principal, and the balance of the net income shall be used for carrying on the study of astronomy, and especially the study of our solar system and its evolution, at my observatory, at Flagstaff, Arizona, and at such other places as may from time to time be convenient.

"In addition to my observatory at Flagstaff, and except as hereinafter provided for the benefit of my wife, not exceeding three (3) per cent of the capital of the original trust fund and its accretions and the accumulations resulting from the addition of ten (10) per cent of the annual income as aforesaid shall be kept invested in real estate, but nothing herein shall prevent the trustee from investing income in real estate to any amount, nor from receiving additional

sums of money from other sources to be invested in real estate, or otherwise.

"The trustee shall also have full control of the management of the trust and shall have power to appoint, select and discharge the director and all other employees and agents of the observatory, but I hope that Dr. V. M. Slipher will be appointed the first director after my decease, and that Mr. C. O. Lampland will succeed him.

"Each trustee shall appoint his own successor within a week, or as soon as possible, after his accession to his office, in order that no failure of a regular nomination may take place. This appointment of his successor shall be made by means of a written instrument to be delivered to the American Academy of Arts and Sciences, which they shall open after the decease or resignation of the trustee who delivered it to them. The trustee may at any time, and as often as he sees fit, revoke his former appointment and take back the aforesaid instrument, substituting another in its place. He may also nominate his successor in his will if he please so to do; and in case of a difference in the person nominated in the above-mentioned instrument, the individual nominated by the instrument last executed shall be his successor. In selecting a successor I hope that preference will be given to a male descendant of my immediate family if a suitable one exists. A trustee may resign by written instrument delivered to said American Academy of Arts and Sciences.

"In case of a vacancy occurring in the office of trustee which has not been filled as aforesaid, a trustee shall be appointed in a written instrument delivered to said academy by the oldest male descendant of my father, Augustus Lowell, then living, who may appoint himself or any other qualified person.

"The trustees for the time being shall have all the rights, titles and powers and be subject to all the duties herein given to or imposed upon the original trustee.

"Fifth. The Lowell Observatory shall at no time be merged or joined with any other institution.

"Sixth.   Provided, however, that during the life of my said wife she shall have the right to occupy my house numbered 11 West Cedar street and 102 and 104 Mount Vernon street, Boston, Massachusetts, rent free during her life, and shall receive from the above trust an annuity of sixty thousand ($60,000) dollars per year, and in case said house is sold shall be entitled to a corresponding increase in her annuity, or to have an appropriate amount invested in a suitable dwelling house elsewhere, which she may occupy rent free during her life.   All taxes on such house shall be paid out of the residue of the income of the trust.

"Seventh.   I empower my trustee at any time and for any purpose to sell and convey any real or personal estate wherever situated of which I may die possessed, or which may at any time come into his hands as trustee, at public or private sale without the aid of any court, and to make all requisite deeds and transfers, and to invest and reinvest the proceeds of such sales, and to change real estate into personal estate and personal property into real estate, and no purchaser from my executors or trustee shall be required to look to the application of the purchase money.

"I further empower my trustee to retain any property in the same state of investment in which he receives the same, notwithstanding such investment may be a wasting investment, or one which would not be sanctioned by a court of equity, and I direct that my executors and trustee shall be chargeable only for such moneys, stocks, bonds and securities as they shall respectively actually receive and only for their own respective acts, receipts, neglects or defaults, and not for those of each other, or of any broker, banker, agent or attorney, with whom money or securities may be deposited, or for any deficiency, depreciation or loss in value of any stocks, bonds or securities, or any other loss except the same shall happen through their own willful default or gross neglect, and I direct that if any stocks, bonds or other securities are retained or purchased by my trustee

29 Ariz.—10

at a premium above their par value, or are wasting securities, my trustee may, if he sees fit to do so, regard the whole or the interest or dividends received on such securities as income, and generally I give my trustee full power to determine what expenses, commissions or charges shall be charged to income and what to capital, and what dividends, interest or other property received shall be deemed capital and what income.

"In witness whereof, I hereunto set my hand and seal this 21st day of February, 1913.

"[Signed]          PERCIVAL LOWELL.

"Instead of one-hundred and fifty thousand dollars I give one hundred and seventy-five thousand dollars to my wife, Constance. I direct that she shall receive one-half the income (net after deduction of the 10%) from the trust fund instead of sixty thousand dollars a year. I also direct that she shall be consulted about the conduct of the observatory.

"Signed and sealed by me,

"PERCIVAL LOWELL."

"Codicil to My Last Will:

"December 15, 1915.

"I hereby direct that my wife, Constance, shall have the right to live in and enjoy the B. M. House at the Lowell Observatory during her life.

"PERCIVAL LOWELL."

Passing for the present a decision as to which contention—the one maintained by the appellant or the one maintained by the appellee—is the correct one, we will discuss their effect, if allowed, upon the testator's will.

If there can be written into the will a prohibition against the disposition or sale of the real estate near Flagstaff, upon which the Lowell Observatory is situate, for a period of time longer than the absolute power of disposition of real property is permitted to be suspended, the gift to the trustee for the benefit of that institution runs counter to our statutes against perpetuities. The pertinent statutes bearing

on this question are found in title 46, Civil Code, entitled "Real Property" and are as follows:

"4679. Every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed.

"4680. The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate and twenty-one years thereafter, except when real estate is given, granted or devised to literary or charitable corporations which shall have been organized under the laws of this state, for their sole use and benefits, or to any cemetery corporation, society or association, and except also in the single case mentioned in the next section."

It is not contended, nor indeed could it be contended, that the estate taken under the will by the trustee is a future estate, and we set out paragraph 4679 only for the purpose of indicating the policy of the law to be against permitting the donor of property, whether by deed or will, suspending the donee's power of alienation beyond the period prescribed by the statute. The above two paragraphs, as indeed the whole of title 46, *supra,* as the marginal notes show, were lifted bodily from the statutes of Wisconsin. They were adopted by our legislature in 1912. Before that time they had been construed by the highest court of that state, and, under the general rule, such construction we adopted here. What that construction was we defer stating for the present and until we have stated the rule concerning perpetuities at the common law. "The English doctrine of perpetuities," says Mr. Chief Justice RYAN, in *Dodge* v. *Williams,* 46 Wis. 70, 95, 50 N. W. 1103–1106, "ap-

plied to estates both real and personal and grew up by a series of judicial decisions. Perry, Trusts, §§ 377, 379. It appears to have been applied to private trusts, but not to trusts for charitable uses, which usually are essentially and indefinitely permanent. Id., §§ 384, 687, 736. 'The rule of public policy which forbids estates to be indefinitely inalienable in the hands of individuals does not apply to charities. These, being established for objects of public, general, and lasting benefit, are allowed by the law to be as permanent as any human institution can be, and courts will readily infer an intention in the donor that they should be perpetual. 1 Spence, Eq. Jur. 588; *Mayor, etc.* v. *Whitson,* Dwight, Char. Cas. 171; *Magdalen College* v. *Attorney General,* 6 H. L. Cas. 205; *Perin* v. *Carey,* 24 How. 465 [16 L. Ed. 701]; *King* v. *Parker,* 9 Cush. [Mass.] 82; *Dexter* v. *Gardner,* 7 Allen [Mass.] 246. If an alienation of the estate becomes essential to the beneficial administration of the charity, it may be authorized by a court of chancery [citing cases].' "

So the rule in Wisconsin, and practically every state in the Union where the question has been before the courts, is that personal property may be given in perpetuity for a charitable use; and this is also the rule as to real property in common-law states, except where abrogated or modified by statute. In this state we have adopted the common law in these words:

"5555. The common law, so far only as it is consistent with, and adapted to the natural and physical conditions of this state, and the necessities of the people thereof, and not repugnant to, or inconsistent with, the Constitution of the United States, or the Constitution or laws of this state, or established customs of the people of this state, is hereby adopted

and shall be the rule of decision in all courts of this state.''

If it be granted that the legislature, in adopting paragraph 4680, *supra,* by implication forbade perpetuities in real property for charitable uses, its silence as to personalty must be taken as an adoption of the common law in that respect and as ''the rule of decision in all courts of this state.'' The common-law perpetuities in both real and personal estates when devoted to private uses were held to be against public policy, because the effect was to take such property out of commerce and build up gigantic family fortunes. The courts of this country, following that lead, have generally held constitutional and statutory provisions against perpetuities to have no relation to charitable or public uses, but to be in furtherance of the common-law policy of forbidding perpetuities in aid of private uses.

There was more or less uncertainty as to what the courts of Wisconsin had decided the effect of their statute against perpetuities was, when real property was given for a charitable use with the power of sale suspended beyond the statutory period, until after the decision in *Danforth* v. *City of Oshkosh,* 119 Wis. 262, 97 N. W. 258. In that case it was finally decided, by a divided court:

'' . . . That the Statutes [our 4679 and 4680], as an original question of construction, prohibits suspension of the power of alienation for the forbidden period, whether the grant be for charitable or other purposes, save for the express exceptions. . . . ''

New York, under a statute practically the same, first held it did not prohibit perpetuities for charitable uses (*Williams* v. *Williams,* 8 N. Y. 525) but subsequently took the same view of the statute as the Wisconsin courts. In both these states the legisla-

tures have passed laws authorizing the creation of trusts in perpetuity for charitable uses; and in 1921 our legislature amended paragraph 4680 (Laws 1921, c. 141) so that, since that time and now, gifts of realty in perpetuity to others in addition to corporations for charitable uses is permitted. But before our statute was amended, following the construction given it by the courts of the state from which it was taken, if the testator's will suspended the absolute power of alienation for a longer period than during the continuance of two lives in being, and 21 years thereafter, as to the real estate upon which the observatory is situated, it created a trust in that property forbidden by our statutes. It is not contended that the power of alienation was suspended as to any of the rest of the property of the estate. The power of alienation is not suspended as long as there is some person in being who can convey.

The determinative question then is, Has the testator attached to his gift in trust for the Lowell Observatory the requirement that his trustee keep intact, as a part and parcel of that institution, the land and premises on which it is situated? or, Has he given to such trustee the present right and power to sell and dispose of such land and premises in the exercise of a proper discretion?

We are thoroughly satisfied that he gave to his trustee all the residuary estate in trust for the use of the Lowell Observatory, both real and personal property, with the present right and power to sell the same, and that such right and power to sell extends to the realty upon which the observatory is situated no less than to the rest of the realty, and we so conclude, because the testator in language too plain for doubt says, first, "I empower my trustee at any time to sell and convey any real or personal estate whereever situated of which I may die possessed; . . . "

second, his gift is to the Lowell Observatory, an institution. He so characterizes it, for he says, "The Lowell Observatory shall at no time be merged or joined with any other institution." As an institution, the Lowell Observatory was to be perpetual. The study of astronomy was to continue, although the telescopes and other apparatus now in use become obsolete and the building that houses them unfit, or its present location undesirable; and, in such a contingency, means are provided to take advantage of new inventions or improvements in telescopes, housing and location. Astronomy and its as yet unfathomed secrets were the objects of the testator's beneficence more than the place where the institution endowed by him was to be situated. The place, like the instruments now employed for observation, he knew might become in course of time undesirable because of the changed conditions or the encroachments of people and business. True, the testator provided that a certain part "of the net income (of the trust property) . . . shall be used for carrying on the study of astronomy, and especially the study of our solar system and its evolution, at my observatory, at Flagstaff, Arizona, and at such other places as may from time to time be convenient."

This last expression of the will appellant sets up against the direct and positive power of sale conferred on the trustee, as also against the reason and logic of the situation, as a mandate that the Lowell Observatory should remain perpetually in its present location, and that the sale of its situs is interdicted for all time. We can ascribe no such import to his language. On the contrary, we think its reasonable intendment is that the study of astronomy shall be carried on where the observatory is now located, or some other available and practical location at or near Flagstaff, "and at such other places as may from

time to time be convenient.'' This interpretation does not destroy the will nor ignore the power of sale conferred on the trustee.

In *Board of Trustees* v. *Monteith,* 64 Or. 356, 130 Pac. 633, a similar question arose. The donors had given to a church corporation, to be used for educational purposes, four blocks situated in the city of Albany (upon which such corporation had already constructed a building at a cost of eight thousand dollars), upon condition that such premises should be ''for the uses and purposes expressed in said articles of incorporation.'' The donee corporation bought another site for its educational purposes outside of but adjacent to Albany and took steps with the avowed purpose of quieting its title as against the donors and of selling the said four blocks and using the proceeds on its new site. The donors met the action to quiet title by showing that the donee's articles of incorporation was for the purpose of establishing and maintaining a college *at* Albany upon the real property donated to it by them. The syllabi (paragraphs 2 and 4) sufficiently reflect the opinion of the court upon the points raised by the donors. They are as follows:

''A conveyance of land to a corporation, on which such corporation had built a college in consideration that the institution, so erected and situated, should be forever maintained, does not require that the college shall forever remain upon the premises described, but the premises may be sold as long as the proceeds are used for the purpose of maintaining the college on any site; the 'institution' not consisting of the premises and buildings, but of the association organized for the purpose of maintaining a college.''

''A gift of property to be used in the maintenance of an institution of learning 'at' Albany does not mean that such institution shall be located within the limits of Albany, but may be located 'near' such place.''

Other cases in point are *Avery* v. *Home for Orphans,* 228 Pa. 58, 77 Atl. 241; *In re Rogers' Estate,* 185 Pa. 428, 39 Atl. 1109; *Jones* v. *Habersham,* 107 U. S. 174, 27 L. Ed. 401, 2 Sup. Ct. Rep. 336. So we conclude that, when the testator directed that his gift should be employed to promote the study of astronomy at his observatory at Flagstaff, he did not necessarily intend that it should remain in the exact locality where it then was, if for any good reason it should be relocated; and that, by the expression, "at my Observatory at Flagstaff," he meant in that vicinity. The text of 11 C. J. 354, section 71, bearing upon this question, is as follows:

"A sale is frequently the best mode of executing a charitable trust as to part of the property, and sometimes as to the whole of it. When, by the instrument creating the trust, the trustees are invested with express power to alienate, there is no room for question."

It is apparent, from a reading and a study of Dr. Lowell's will, that whoever drafted it knew that many charitable trusts had been wrecked or greatly damaged because the donor had violated the statutes against perpetuities by suspending the absolute power of sale beyond the period prescribed, and with that knowledge he deliberately empowered his trustee to sell any or all of his real property wherever it was situated. It is not unreasonable to assume that, if Dr. Lowell did not himself know the law in that respect, he secured advice and directed his will drawn in such manner as that no question could arise as to the suspension of the power of sale by the trustee, or concerning perpetuities. He left his estate, except what he gave appellant, with his trustee, with powers untrammeled to administer it. He knew this was necessary to secure the best results in the study of the science of astronomy, since it, as every other science,

was advancing by leaps and bounds, and its needs of to-day might and would be supplanted by the inventions and discoveries of to-morrow. He was not insensible of the great powers with which he had invested his trustees, and he discriminately chose them from his own lineage or near relatives, and, in case of vacancy, authorized the oldest male descendant then living, of his father, August Lowell, to appoint himself or any other qualified person as his trustee.

But it is said the testator's intention to suspend the power of sale of the observatory property is indicated by his last codicil, wherein he says:

"I hereby direct that my wife, Constance, shall have the right to live in and enjoy the B. M. House at the Lowell Observatory during her life."

This, at most, could be no more than a limitation upon the use of a piece of property that the testator had already in unmistakable terms given his trustee for the use of the Lowell Observatory. As was said in *Danforth* v. *City of Oshkosh, supra:*

"The taking of such complete title is, however, subject to the further inquiry whether the attempted limitations upon the use or disposal bring the situation within the statute against perpetuities, so as to render the attempted estate void. That, then, is the next question. When a fee is granted, limitations inconsistent with a fee, either on the use or on the grantee's freedom of conveyance, are deemed to be void, as repugnant to the main purpose of the grant, unless, by reasonably direct language, disobedience of such limitations is declared a condition subsequent upon which the title conveyed is to terminate. The law does not permit the grantor to convey full title to land, and yet to restrain the conduct of the grantee with reference thereto in respects essential to a fee, though equity does recognize such a power when, and only when, a trust is created as hereinbefore explained. *Saxton* v. *Webber,* 83 Wis. 617, 626, 20

L. R. A. 509, 53 N. W. 905; *Van Osdell* v. *Champion,* 89 Wis. 661, 665, 46 Am. St. Rep. 864, 27 L. R. A. 773, 62 N. W. 539; *Zillmer* v. *Landguth,* 94 Wis. 607, 69 N. W. 568; *Re Kopmeier's Will, supra* [113 Wis. 233, 89 N. W. 134]. If the limitations upon the city's use and disposal of the property conveyed to it 'absolutely,' and therefore in fee, are mere limitations, and so repugnant to the grant as to be void under the rule of the above cases, of course there is no suspension of power of alienation, for then the title would be in fee simple absolute, with full power in the city to convey at any time."

See, also, *City of Philadelphia* v. *Girard's Heirs,* 45 Pa. 9, 84 Am. Dec. 470; 5 R. C. L. 299, § 11.

That the trust created is a charitable trust, as that term has been defined by the courts, we think cannot be disputed. In the following quotation, from 5 R. C. L. 330, section 55, is stated a number of uses the courts have held to be charitable in their nature and have sustained gifts to carry them on:

"A trust for the purposes of education is a good charitable trust. The particular character of the education sought to be fostered by a charitable trust does not in any way affect its validity. Thus a gift is a valid charitable gift that is made for the purpose of furnishing education in the fine arts; or for the purpose of research work in history or any other department of learning; or for the purposes of establishing prizes to be awarded for the best productions in the fine arts; or to aid the study of natural history. A trust established for the purpose of teaching and practicing the doctrines of socialism is a good charitable use, and a gift in trust for the purpose of spreading light on social and political liberty and justice in the United States is a valid charitable use."

In *Spence* v. *Widney,* 5 Cal. Unrep. 516, 46 Pac. 463, a gift in aid of astronomy was treated as valid.

The trust in this case being charitable and public

in its nature, the courts of the state, by virtue of their common-law and equity powers, have jurisdiction to supervise and control its administration, to prevent its misuse or abuse, and enforce its execution. 11 C. J. 356, § 73. However, that feature of the case has occasioned the court little concern. It is unthinkable that the trustee, in whom the testator reposed such unlimited confidence and power, would do otherwise than faithfully and meticulously follow the instructions contained in the instrument granting and defining the trust, and, when in doubt of the course to pursue or action to take, seek the advice of the court.

We have not considered appellee's plea of *res judicata*, as it seemed more satisfactory to decide the case on its merits.

The judgment and order appealed from is affirmed, and the cause is remanded, with directions to the lower court to make distribution of the residuary estate in accordance with this opinion.

McALISTER, C. J., and LOCKWOOD, J., concur.