[Civ. No. 11606. First Dist., Div. One. Dec. 5, 1941.]

FRANK M. MITCHELL et al., Appellants, v. WILLIAM R. BAGOT, Defendant; JAMES A. MITCHELL et al., Respondents.

Snook & Snook & Chase for Appellants.

Roscoe D. Jones for Respondents.

PETERS, P. J.—Plaintiffs brought this action to secure a determination that under the decree of distribution in the estate of Addie J. Mitchell their father James A. Mitchell received only an ordinary life estate in certain real property with remainder to plaintiffs. The plaintiffs are the adult son and daughter of James A. Mitchell, who was married to Addie J. Mitchell at the time of her death. Addie J. Mitchell was the stepmother of plaintiffs. In form, the action is one to quiet title and for declaratory relief.

The decree of distribution, dated December 22, 1936, provides that, by virtue of the provisions of the will of Addie J. Mitchell, it is necessary to appoint a trustee; that the property of the estate consists of $255.31 in cash and a certain described parcel of real property; that James A. Mitchell "is entitled to use and dispose of said estate, save that he shall not convey any thereof by deed of gift or unless he has

received the full market value, and it is therefore necessary that a trustee be appointed so that in event of a sale the court may be able to pass upon the question as to whether the full market value is received.

"It is therefore ordered that William R. Bagot be and he hereby is appointed trustee herein . . . and that all the property of said estate should then be distributed to William R. Bagot, as trustee, to have and to hold the same and to collect the income therefrom and deliver the income to said James A. Mitchell, during his life, and also to make sale of the said property when and as ordered by the court herein, for the benefit of said James A. Mitchell during his lifetime, and that upon the death of said James A. Mitchell, the said trustee shall turn over and convey the *corpus* of the estate then remaining, if any, to Frank M. Mitchell and Ethel G. Nelson, share and share alike."

It was the theory of the appellants at the trial, and it is urged on this appeal, that the portion of the decree creating the trust is void because no mention of a trust is to be found in the will; that under the will, and under the decree of the distribution, if the provisions concerning the trust are deleted, James A. Mitchell received but an ordinary life estate without power to consume the *corpus*; that the remainder interest, subject only to this ordinary life estate in James A. Mitchell, is vested in appellants.

The trial court found that in January of 1934 James A. Mitchell was adjudged to be an incompetent person, and Mary E. Cadman was appointed guardian of his estate; that the will of Addie J. Mitchell, who died in August of 1934, makes no provision for appointment of or devise to a trustee; that said will was a joint will with her husband, James A. Mitchell; that so far as the property involved is concerned, the will reads as follows:

"Now, therefore, each of us does hereby give, devise and bequeath unto the other absolutely all of his or her real or personal property unto the survivor without restrictions as to its use or disposal save that the survivor shall not deed any of it away by deed of gift or unless he or she has received the equivalent of its full market value to the end that should the survivor not have disposed of all of said property during his or her lifetime then the remainder of said property may be divided between our respective issue and relations in the

following manner and proportions, to wit''; that the remainder was devised to appellants; that on December 22, 1936, the decree of distribution heretofore mentioned was entered; that under the will and the decree James A. Mitchell has a life estate with power to consume the *corpus* for his support, subject only to the limitation that he cannot give the property away and if he sells it he must receive the full market value; that Mary E. Cadman has a lien on the interest of Mitchell in the sum of $1,987.75, with interest. The court held that the portion of the decree attempting to create a trust is null and void; that James A. Mitchell had a life estate of the type heretofore described; that the guardian had a lien.

■ The decree of distribution was entered in December, 1936, and had become final long prior to the institution of this action in September, 1939. There can be no doubt that under the decree of distribution the trial court created a trust and gave to the beneficiary thereof a life interest with the right to consume the *corpus* under certain conditions. This type of estate is recognized in this state. (*Estate of Rath,* 10 Cal. (2d) 399 [75 Pac. (2d) 509, 115 A. L. R. 836] ; *Lord* v. *Atchison,* 12 Cal. (2d) 681 [87 Pac. (2d) 346] ; *Colburn* v. *Burlingame,* 190 Cal. 697 [214 Pac. 226, 27 A. L. R. 1374].) So far as the general nature of the estate devised to James A. Mitchell is concerned, there can be no reasonable doubt but that the probate court reasonably interpreted the provisions of the will. ■ Appellants seek to deprive their father of the right to consume the *corpus* of the estate for his support by the following arguments: They first urge that since the will did not provide for a trust, the probate court had no power to create one, and that, therefore, this provision of the decree is void. They next urge that this either means that there never has been a valid distribution, or if the nullity extends to only part of the decree, then under the decree with the trust provisions deleted James A. Mitchell received only an ordinary life estate with no power to consume principal. It seems too plain to require further discussion that neither under the decree nor under the will was James A. Mitchell given only an ordinary life estate. Appellants want the trust provision deleted from the decree because they contend it is in conflict with the will, but they urge that after these provisions are deleted from the decree, there is left a decree giving James A. Mitchell only an ordinary life estate. What appellants seek, therefore, is to delete one

provision of the decree because it is in conflict with the will, and to leave the balance of the decree standing even though it likewise conflicts with the provisions of the will. The law would indeed be impotent if such an unjust result were to be approved. The complete answer to appellants' argument in this respect is that if all provisions of the decree relating to the trust are deleted there would still remain a decree giving James A. Mitchell a life estate with power to sell the property when and as ordered by the court "for the benefit of said James A. Mitchell during his lifetime." There can be no doubt, therefore, that the trial court in this action correctly held that, if the trust provisions are deleted, James A. Mitchell has a life estate with power, under certain conditions, to consume the principal.

The judgment of the trial court must be reversed, however, for another reason. The trial court held that the provisions of the decree creating the trust were void for the reason that the will made no provision for the trust. The decree of distribution became final several years before the present action was instituted. Both parties profess to be mindful of the rule that where distribution has been ordered it is the decree rather than the will which controls in case of conflict between them. Neither side to this appeal, however, objects to the judgment insofar as it adjudges that the trust is a nullity and void. Respondents do not object because it is agreeable to them that James A. Mitchell should have his interest without interposition of a trustee. Appellants do not object because invalidity of the trust provisions in the decree affords them their only opportunity to argue that James A. Mitchell has only an ordinary life estate.

We are of the opinion that the trial court was without power to hold that the trust provisions in the decree were void and could be collaterally attacked. There is no rule of law that will permit a court sitting in equity to declare a decree of distribution void because it does not conform to the provisions of the will. If such were the law there would be no principle that the decree is conclusive as against collateral attack even though in contravention of the terms of the will. The rule is well settled that once the decree of distribution becomes final it becomes the measure of the rights of the beneficiary and is immune from collateral attack even though in contravention of the terms of the will. The will

cannot be used to impeach though it may be used to interpret the decree. Thus in *Miller* v. *Pitman* (180 Cal. 540 [182 Pac. 50]) the will left the land to Charlotte, the wife of decedent for life, remainder to the heirs of his children. Miller was entitled to a one-sixth interest in remainder. By the decree of distribution Charlotte was given a fee simple. Years after the decree had become final Miller commenced this action on the theory that the probate court had no jurisdiction to distribute more than a life estate to Charlotte, and that the remainder interest had never been distributed. This theory, which is substantially the same theory advanced by the appellants in the instant case, was approved by the trial court. In reversing the judgment the court stated (p. 543): "It thus appears that the paramount point presented upon the appeal involves the scope, effect, and finality of the decree of distribution which was made and entered in November, 1891, and never appealed from. The fundamental finding of the trial court to the effect that Charlotte Pitman took no more than a life estate by the decree of distribution is not supported by the evidence. The only evidence responding to this phase of the case consists of the will of Elias W. Pitman, the petition for its probate, the petition for the decree of distribution and the decree itself. Neither extrinsic fraud nor mistake in the procurement of the decree was alleged, shown' or found. The decree is valid on its face. Clearly, the probate court had jurisdiction of the subject matter of the decree of distribution, and the fact that the decree erroneously construed the terms of the will did not operate to render the decree void. The time for appeal from the decree has long since expired. It is well settled that a decree of distribution is not subject to collateral attack, no matter how erroneously it may appear to depart from the terms of the will devising and bequeathing the estate distributed, if all of the interested parties have had due notice of the petition." Again at p. 544 it was stated: "Viewed in the light of this code section, there is no escape from the conclusion that the decree in controversy in express terms distributed all of the property of the estate to Charlotte Pitman without limitation and thereby confirmed in her an estate in fee simple absolute. This decree, in the absence of a showing or claim of extrinsic fraud or mistake, was irrevocable save upon appeal within the time provided by law, even though it was in contravention of the terms of the will.

(*McKenzie* v. *Budd, supra* [125 Cal. 600 (58 Pac. 199)]; *Mulcahey* v. *Dow, supra* [131 Cal. 73 (63 Pac. 158).] So long as this decree stands unimpeached by such fraud or mistake, and it has not been so impeached herein by any fact alleged in the pleadings, developed in the proof or found by the court, there is no theory upon which any right or title of the plaintiffs to the land in question can be predicated and sustained. It follows that neither the pleadings nor proof of the plaintiffs suffice to support an action to quiet title, and, consequently, the question of the statute of limitations, which was put in issue by the pleadings, need not now be considered.''

The rule, citing many cases, is stated as follows in *Estate of Goldberg,* 10 Cal. (2d) 709, 713 [76 Pac. (2d) 508]: ''In general, and in the absence of some existing and affecting condition such as extrinsic fraud, or anything akin thereto, the rule would appear to be well established that even though from a standpoint of following the specific provisions of the will, a decree of distribution of the estate is inaccurate and incorrect, nevertheless after the decree has become final, for all time thereafter, it remains the unalterable measure of the rights of all persons who may be interested in the estate.'' (See, also, *Lord* v. *Atchison,* 12 Cal. (2d) 681 [87 Pac. (2d) 346]; *In re Ewer,* 177 Cal. 660 [171 Pac. 683]; *Wills* v. *Wills,* 166 Cal. 529 [137 Pac. 249]; 11B Cal. Jur., p. 796, § 1296; 26 Cal Jur., p. 878, § 194.) Under these authorities the rights of all parties in the estate, in the absence of extrinsic fraud, are conclusively measured by the decree of distribution. The probate court interpreted the will as requiring the appointment of a trustee. Whether that determination was right or wrong is not now in issue. Once interpreted by the decree, when the decree becomes final, that interpretation is conclusive. For these reasons it was clearly error for the trial court to have set aside the portion of the decree creating the trust.

Appellants also complain of that portion of the judgment which decrees that Mary E. Cadman, guardian of the person and estate of James A. Mitchell, has a lien on the interest of Mitchell in the real property in the sum of $1,987.75. Mary E. Cadman was appointed guardian of the estate and person of James A. Mitchell, an aged incompetent, in January, 1934, before the death of Addie J. Mitchell. In

her first and second accounts current in the guardianship proceeding she set forth that she had advanced for the support and care of the ward the sum of $1,987.75 in excess of guardianship receipts. The order settling the second account is included in the record herein. It recites that on settling the first account the court decreed that the guardian had a lien upon the property of the guardianship estate in the sum of $833.77. The order settling the second account grants the guardian a lien in the sum of $1,987.75, which includes the $833.77 first allowed, plus $1,153.98 advanced in the period during the first and second accounts. The judgment in the present suit determines that this lien is valid and subsisting. Appellants urge that the probate court, in settling the intermediate accounts of the guardian, had no legal right to grant the guardian a lien. This is obviously a collateral attack on the orders approving these accounts. For that reason, in the present proceeding, appellants can prevail only if the granting of the lien was beyond the jurisdiction of the court in the guardianship proceeding.

Appellants rely on the rule that orders settling intermediate accounts of a guardian are not conclusive, but the items thereof may be re-examined upon final accounting incident to the termination of the guardianship. (*Guardianship of Di Carlo,* 3 Cal. (2d) 225 [44 Pac. (2d) 562, 99 A. L. R. 990] ; *Guardianship of Vucinich,* 3 Cal. (2d) 235 [44 Pac. (2d) 567] ; *Estate of Eaton,* 38 Cal. App. (2d) 180 [100 Pac. (2d) 813].) Appellants urge that, in view of this rule, until final accounting it cannot be determined conclusively if any sum is owing the guardian. Appellants do not attack the propriety of the guardian advancing her personal funds to support and care for the ward where guardianship income is insufficient, and they concede that, in a proper case, on termination of the guardianship the guardian, under the decisions, would be entitled to a lien for the excess of advances over income. ■ Appellants also refer to the well-settled rule that the personal representative of the estate of a decedent may not be granted a lien for advances made to a distributee until final distribution. (*Estate of Ross,* 179 Cal. 358 [182 Pac. 303] ; *Estate of Bennett,* 13 Cal. (2d) 354 [90 Pac. (2d) 84, 126 A. L. R. 771].) This is the rule although intermediate accounts of a personal representative, unlike those of a guardian, are conclusive when settled. (11B Cal. Jur., p. 610, § 1145; § 931, Probate Code.)

It seems to us that these arguments do not establish that the trial court in settling the intermediate account of a guardian has no jurisdiction to grant the guardian a lien for necessary advancements. In spite of the lack of finality of the intermediate accounts of a guardian it would be a very harsh rule that would preclude the guardian from reimbursing herself for advancements during the pendency of the guardianship proceeding and that would compel her to await the termination of the guardianship which may last indefinitely. No hardship can be visited upon the ward by such allowances. If, on the final termination, it develops that some of the intermediate allowances were improper and that for that reason the guardian owes the ward a sum of money, the guardian would be liable therefor, and the ward would be protected by the guardian's bond. Whether the facts justify a lien in a particular case, and the extent of that lien, is a matter within the sound discretion of the court. Error in exercising that power, even if error existed in the present case, would not go to the jurisdiction of the court.

A guardianship presents an entirely different problem from that involved in the estates of decedents. The personal representative of an estate may not be granted a lien for advances to a legatee because until final distribution it cannot be ascertained if that legatee is entitled to any portion of the estate. But in a guardianship proceeding there is always the ward's estate. In the present case, whether the ward James A. Mitchell had a normal life estate, or whether he had a life estate with power to consume the *corpus*, he had some interest in the property. The lien granted is merely on the interest of the ward. The guardian, in the instant case, has waived all compensation as guardian but has been compelled to expend nearly $2,000 of her own money for the care and maintenance of her ward. The income of the real property is not sufficient to care for the ward. Because of this litigation the ward has been prevented from selling the *corpus*. If a guardian had to wait until final termination to be reimbursed for necessary advances there would be few guardians who would make such advances. It was undoubtedly with this thought in mind that the legislature enacted section 1502 of the Probate Code. So far as pertinent here, that section provides: "When a guardian has advanced, for the suitable support, maintenance or education of his

ward, an amount not disproportionate to the value of the ward's estate or his condition of life, and the same is made to appear to the satisfaction of the court, by proper vouchers and proofs, the guardian must be allowed credit therefor in his settlements." Just how that credit is to be allowed is clearly within the discretion of the court. If the court determines that the granting of a lien is reasonably necessary, that power clearly is granted by the section. It will be noted that the section provides that the guardian shall be allowed credit for advancement "in his settlements." The legislature was careful not to say on "final settlement," but used the plural, obviously including intermediate settlements. Under this section we think the trial court acted well within its jurisdiction in granting the guardian a lien to secure her advancements.

For the foregoing reasons, that portion of the judgment declaring that the part of the decree of distribution creating a trust is void is reversed with instructions to the trial court to amend its findings of fact and conclusions of law and to enter its judgment to the effect that the decree of distribution is effective in all particulars, and that thereunder the trustee named has the right to sell the *corpus* and apply the proceeds to the support of James A. Mitchell, with the right in appellants to receive on the death of Mitchell only such part of the property as may not then be consumed for his support. The balance of the judgment is affirmed. Both sides to bear their own costs in this appeal.

Knight, J., and Ward, J., concurred.