192 P.2d 229

**SHATTUCK v. SHATTUCK et al.**

No. 4918.

Supreme Court of Arizona.

March 31, 1948.

124

Conner & Jones, of Tucson, for appellant.

Kramer, Morrison, Roche & Perry, of Phoenix (James T. Gentry, of Bisbee, Chas. D. McCarty, of Phœnix, and T. N. Stensland, of Chicago, Ill., of counsel), for appellees.

KELLY, Superior Judge.

The suit in the court below was one brought under the Declaratory Judgment Act, Code 1939, § 27-701 et seq., by plaintiff in her representative capacity of executrix against the trustee and all other beneficiaries and parties interested as heirs or legatees under the will of the late Lemuel C. Shattuck for the ascertainment and interpretation of the rights of her principal, who was her deceased husband, as a son and heir of said Lemuel C. Shattuck. By the complaint it appears that Lemuel C.

Shattuck, the ancestor, had died testate in Cochise County, the place of his residence, on September 7, 1938. His will was duly admitted to probate on October 11, 1938, and after the due administration of the estate all of which for the purposes of this litigation was by appropriate stipulation considered to be personalty the residue was finally distributed to the trustee, pursuant to the terms of the will.

A verbatim copy of the will was made a part of the complaint, and also a verbatim copy of the clause of distribution in trust as ordered in the probate court by its final decree as entered on December 21, 1939, closing and winding up the administration of the estate. The effective clause as set forth in the order is in this language:

"To: Spencer S. Shattuck, as Trustee of the Lemuel C. Shattuck Trust:

"All the rest and residue of said property and estate, to be held in trust as provided under the Last Will and Testament of Lemuel C. Shattuck, as above described; and that all other property of said deceased, of whatsoever kind and nature, situated in the State of Arizona, whether known or unknown, be, and the same is hereby distributed to Spencer S. Shattuck as Trustee, above mentioned, and to be handled by him in accordance with the trust provisions of said Last Will and Testament of Lemuel C. Shattuck."

So far as material here the trust provisions of the will set up a trust of all of the residue of the estate by the terms of which the corpus was to be held by the trustee for the term of 40 years beginning with the death of the testator, all income meanwhile to be paid semiannually in equal shares (with an unimportant exception affecting the youngest child until age 25) to the testator's six children, or in the event of death to the issue living at the time of death, with the corpus finally divided equally among the children, the issue of any deceased child to take that share per stirpes. Additional terms effectively made the instrument into the equivalent of a spendthrift trust.

For a period of years following the distribution the trustee made the semiannual payments of income as the will and decree directed, but after the death of Mark Grenfell Shattuck, who died testate in California on November 5, 1942, the refusal of the trustee to continue the disbursement of income to his estate precipitated this litigation.

For its negative value it is but just to state that no word of fraud or irregularity in the probate proceedings is mentioned in the complaint and it may be assumed that all of those proceedings were fair and regular and in due observance of every applicable provision of the probate code.

The foregoing is not intended as a complete statement of every detail, for matters having to do with the accumulation of income in the interim between the latest disbursement and the death of Mark were dis-

posed of, and the position of the testator's widow which was in part adverse both to that of the plaintiff and her co-defendants was preserved by stipulation pending this appeal, but it effectively outlines the basic facts now pertinent to a disposition of the questions presented

The complaint asked for the construction of the trust provisions of the will, and prayed that said trust provisions thereof continuing the trust for 40 years be declared void as violative of the rule against perpetuities or restraints against alienation; that the trust be brought to an end; that the trustee account, and that one-sixth of the corpus with accruing income be distributed to her as executrix of the will of an heir. To the complaint many motions and objections were filed; to the jurisdiction of the court, that the claim was barred by limitations; that it was barred by laches; that the provisions of the will did not offend the rule against perpetuities; and that the decree in probate was, under the provisions of Sec. 38-1505, A.C.A.1939, conclusive. All other defensive motions were stricken down, but the motion to dismiss, based upon res judicata, was sustained.

Very interesting questions as to whether or not the rule against perpetuities applies to personalty, and whether the facts of this trust bring it within the proscription of the rule, and others, are learnedly and exhaustively discussed in the briefs. We find it unnecessary to discuss them, for if the rule of res judicata applies and the decision of the learned trial court dismissing the action was correct, there is an end to the matter.

It is clear that the primary objective of the complaint was to upset the decedent's testamentary disposition of his estate and whose will had been admitted to probate and under which the residue had been distributed to the trustee named in the will to carry out its provisions. If that purpose shall prevail the result must necessarily be that plaintiff receives no rights under the will, nor the interpretation of any right thereunder, her having any right being altogether dependent upon the setting aside of its provisions and of the decree of distribution, with intestacy accruing.

It would seem an orderly approach to our problem that we get clearly in mind the nature of the instrument under which rights are claimed and as to which the suit asks the court's construction by its declaratory judgment. The source instrument is of course the will. But the will has been probated, the estate distributed, and the proceeding in probate ended by a final decree. Our probate code was taken originally from California, and it has been uniformly held under probate statutes similar to those of Arizona or identical with them that a decree of distribution supersedes the will and prevails over the provisions thereof, and that the will becomes merged in the decree, which itself becomes the measure of the rights of the beneficiaries and the law

of the estate. 12 Cal.Jur. Sec. 944, p. 208; 11b Cal.Jur. p. 796; In re Trescony's Estate, 119 Cal. 568, 51 P. 951; Jewell v. Pierce, 120 Cal. 79, 52 P. 132; Luscomb v. Fintzelberg, 162 Cal. 433, 123 P. 247; In re Horman's Estate, 167 Cal. 473, 140 P. 11; In re Scrimger's Estate, 188 Cal. 158, 206 P. 65; Shipley v. Jordan, 206 Cal. 439, 274 P. 745; In re Easter's Estate, 24 Cal. 2d 191, 148 P.2d 601; In re Gardiner's Estate, 45 Cal.App.2d 559, 114 P.2d 643; Society of California Pioneers v. McElroy, 63 Cal.App.2d 332, 146 P.2d 962; In re Lingg's Estate, 71 Cal.App.2d 403, 162 P.2d 707.

■ It is generally held also that a will may not be used to impeach a decree of final distribution, but may be used only in aid of it. Keating v. Smith, 154 Cal. 186, 97 P. 300; In re Gardiner's Estate, supra; In re Easter's Estate, supra; Tacoma Savings & Loan Ass'n v. Nadham, 14 Wash. 2d 576, 128 P.2d 982.

■ An apt reference to the terms of the will, as was made in the instant case, has the effect of incorporating the will into the decree and of merging the one into the other as fully as though copied into it verbatim. Goad v. Montgomery, 119 Cal. 552, 51 P. 681, 63 Am.St.Rep. 145; Greenwood v. Murray, 26 Minn. 259, 2 N.W. 945.

■ It being a judgment that is sought to be interpreted, or as above noted, to be stricken down and substituted by a new one, it is pertinent to consider the nature of the decree entered in the probate proceeding. It is clear and well understood that the procedure in the settlement of estates as set up in the various states greatly varies. In many states the jurisdiction of such a court is extremely limited, in some to acts of a ministerial nature only, with the hearing of contests of wills and their construction assigned to other courts of general jurisdiction. In many states, particularly of the west where the pattern of California has been of special influence, as in Arizona, the probate court is one of exclusive, original and complete jurisdiction invested with all necessary powers incident to the administration of estates; the probating of wills; the trying of contests thereof; the interpretation of wills; the determination of heirship; and the complete and full distribution of the property of estates to those entitled thereto by law. The decisions of such probate courts are not reviewable by other courts of general jurisdiction, but may be reviewed only by appeal in cases where an appeal is permitted by statute.

It seems quite clear that the quality and effect of probate decrees as construed in states having systems of probate procedure such as those first referred to can be neither controlling, persuasive nor even helpful in appraising or solving the problem presented by this case, for those systems are not in effect in Arizona.

In Arizona the jurisdiction of the Superior Court sitting in probate is fixed by Article VI, Section 6 of the State Consti-

tution, which provides that "The superior court shall have original jurisdiction * * *; of all matters of probate * * *." The wording is identical with that of a like provision of the Constitution of California. Our statutes contain a complete code establishing the venue, powers, functions and jurisdiction of the Superior Court sitting in probate, as well as the forms of practice and procedure. Of a similar probate code of California it was said by the United States Supreme Court: "In view of these provisions, it is difficult to conceive of a more complete and effective probate jurisdiction, or one better calculated to attain the ends of justice and truth." In re Broderick's Will (Kieley v. McGlynn) 21 Wall. 503, 88 U.S. 503, 22 L.Ed. 599.

In many cases this court has recognized that our probate law is almost identical with that of California, and was adopted from that state. Gibson v. Gordon, 30 Ariz. 310, 246 P. 1036; In re Nolan's Estate, 56 Ariz. 366, 108 P.2d 391; Byrd v. Phoenix Savings Bank & Trust Co., 62 Ariz. 474, 158 P.2d 657. .

This court has held that insofar as the Superior Court exercises jurisdiction in matters of estates of deceased persons it is a court of probate and its jurisdiction and functions in that respect are distinct from its jurisdiction and functions when sitting as a court of law and equity. State ex rel. Young v. Superior Court, 14 Ariz. 126, 125 P. 707; Garver v. Thoman, 15 Ariz. 38, 135 P. 724. This same rule has been announced and repeatedly followed in California. 11 Cal.Jur. Sec. 36, p. 252; 7 Cal.Jur. Sec. 81, p. 698; Bennett v. Forrest, 24 Cal.2d 485, 150 P.2d 416.

The probate code of Washington is almost identical with that of Arizona, and with respect to the powers of the Superior Courts of that state sitting in probate, the United States Supreme Court said: "* * * We cannot doubt that not only had the court (the superior court sitting in probate, added) the power to determine the interests of the heirs in the real estate to be distributed, but it likewise had the power to determine whether there were heirs, and if it was found that there were none, to decree distribution according to the statute." Christianson v. King County, 239 U.S. 356, 36 S.Ct. 114, 120, 60 L.Ed. 327.

The power and jurisdiction conferred upon the Superior Court sitting in probate includes the power of the probate court to construe the will of the decedent, the ascertainment of the persons who succeed to the property of the estate, and the validity and effect to be given the language of the will, and this in the exercise of its original and exclusive jurisdiction. This was recognized in the case of Lowell v. Lowell, 29 Ariz. 138, 240 P. 280, which was an appeal from a probate order approving the validity of the will. Similarly and perhaps to more direct effect see Martinovich v. Marsicano, 137 Cal. 354, 70 P. 459; 7 Cal.Jur. Sec. 80, p. 696; 1 Cal.Jur. p. 267; Goad v. Montgomery, 119 Cal. 552, 51 P.

681, 63 Am.St.Rep. 145; Toland v. Earl, 129 Cal. 148, 61 P. 914, 79 Am.St.Rep. 100; Manning v. Bank of California, 216 Cal. 629, 15 P.2d 746; Lord v. Atchison, 12 Cal.2d 681, 87 P.2d 346; In re Easter's Estate, supra; Howard v. Bennett, 53 Cal. App.2d 546, 127 P.2d 1012; In re White's Estate, 69 Cal.App.2d 749, 160 P.2d 204; In re Lingg's Estate, supra.

Similar language appears in Wills v. Wills, 166 Cal. 529, 137 P. 249, a case cited by appellant to another point.

A like result is reached in other courts having a probate procedure comparable to ours. In re Hoscheid's Estate, 78 Wash. 309, 139 P. 61; Pond v. Faust, 90 Wash. 117, 155 P. 776, Ann.Cas. 1918A, 736; In re Monaghan's Will, 199 Wis. 273, 226 N. W. 306; Keith v. Guthrie, 59 Kan. 200, 52 P. 435; State v. Blake, 69 Conn. 64, 36 A. 1019; O'Callaghan v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101.

■ All probate proceedings and judgments rendered therein are in the nature of proceedings in rem, and a final decree of distribution has the force and effect of a judgment in rem. In re Estate of Hesse, 62 Ariz. 273, 157 P.2d 347; In re Broderick's Will (Kieley v. McGlynn) 21 Wall. 503, 88 U.S. 503, 22 L.Ed. 599; State v. District Court, etc., 115 Mont. 174, 140 P.2d 583; Murray v. Superior Court, 207 Cal. 381, 278 P. 1033; State v. Blake, supra; In re Roeder's Estate, 44 N.M. 429, 103 P.2d 631; Ladd v. Weiskopf, 62 Minn. 29, 64 N.W. 99, 69 L.R.A. 785; 34 C.J. Sec.

455; 49 C.J.S., Judgments, § 24; 12 Cal. Jur. Sec. 942, p. 202; Goodrich v. Ferris, 214 U.S. 71, 81, 29 S.Ct. 580, 53 L.Ed. 914, citing William Hill Co. v. Lawler, 116 Cal. 359, 48 P. 323; Richards v. Richards, 20 Colo. 303, 38 P. 323; Christianson v. King County, supra. There are many other cases holding to the same effect.

■ . A decree of final distribution is a judicial construction of a will, conclusive upon all heirs, devisees and legatees, and immune from collateral attack unless it is void on its face. Section 38-1504, A.C.A. 1939, is in part in this language: "Upon the final settlement of the accounts of the executor or administrator, or at any subsequent time, upon the application of the executor or administrator, or of any heir, legatee, or devisee, the court shall distribute the residue of the estate in the hands of the executor or administrator, if any, among the persons entitled thereto; * * *."

The next paragraph (Section 38-1505) requires that: "In the decree the court shall name the persons and the proportions or parts to which each shall be entitled, * * *. Such decree is conclusive of the rights of heirs, legatees or devisees, subject only to appeal."

Section 38-1513, A.C.A.1939, provides: "If the will does not distribute the entire estate of the testator * * * the executor may file his final account in the court in which the will was probated, and ask * * * distribution of the estate, and the same shall be * * * distributed ac-

cording to the laws of descent and distribution."

These are positive duties imposed by statute upon the Superior Court sitting in probate and it necessarily follows that the decree as made included the determination that the will was valid and that there was no intestacy as to any part of the testator's estate. There is a distinction often referred to in this connection between the "duty" and "power" of the court, power, in the sense of jurisdiction being much broader than "duty", and including the power of erroneous decision, correctible only by appeal. Between the erroneous and the correct judgment there is no distinction with regard to their conclusiveness.

"If there is a will the court must pass upon the validity of the disposition attempted by the testator, and the decree of distribution is conclusive thereof.

"The decree is necessarily a judicial construction of the will and fixes the several interests of the distributees by designating the persons and the proportions or parts to which each is entitled, and is conclusive thereof. Legacies not mentioned in the decree are cut off. A claim of interest upon a legacy should be asserted in the proceeding for distribution, and a distribution without interest is a determination that the legatee is entitled to none." 11b Cal.Jur. 796, and cases cited.

That the decree of final distribution is conclusive, as declared by the code paragraph cited above, seems to have been the settled conclusion of the courts from an early time. In California it was held in 1868 that a decree of final distribution "unless subsequently reversed or modified on appeal, was a final distribution of all the funds of the estate and investiture of the absolute right and title thereto in the executrix as sole devisee. Nothing of the estate remains to be acted upon." In re Estate of Garraud, 36 Cal. 277. See also McClellan v. Downey, 63 Cal. 520; Mitchell v. Bagot, 48 Cal.App.2d 281, 119 P. 2d 758.

It has also been held in Arizona that a decree settling an administrator's account is conclusive except on appeal, and is not subject to collateral attack. Gibson v. Gordon, 30 Ariz. 310, 246 P. 1036; In re Sullivan's Estate, 51 Ariz. 483, 78 P.2d 132.

"The will attempted to create a trust which, considered by itself, was no doubt invalid under the rule declared in the Estate of Fair, 132 Cal. 523, 60 P. 442, 64 P. 1000, 84 Am.St.Rep. 70. The validity of the trust is, however, no longer open to question. The decree of the superior court distributing the residue of the estate to trustees upon certain trusts is a conclusive adjudication of the validity of the disposition made by the testator. (citing cases) And it is equally conclusive as an ascertainment and adjudication of the terms of the trust, and of the rights of all parties claiming any legal or equitable interest un-

der the will. (citing cases) The decree supersedes the will and prevails 'over any provision therein which may be thought inconsistent with the decree.' (citing cases) In determining the rights of the widow, we are, therefore, to look, not to the terms of the will, but to those of the decree of distribution." Keating v. Smith, 154 Cal. 186, 97 P. 300, 302.

Many other decisions are to the same effect. " * * * We are not concerned with questions affecting the validity of the will or the trust thereby created. All questions of that nature were conclusively settled by the final decree of the probate court. * * *" In re Innis, 106 Minn. 343, 119 N.W. 48, 49.

Also Reynolds v. Reynolds, 224 N.Y. 429, 121 N.E. 61; In re Micco's Estate, 180 Okl. 183, 68 P.2d 798; Thompson v. Lake Madison Chautauqua Ass'n, 41 S.Dak. 351, 170 N.W. 578; Leavens v. Ewins, 67 Vt. 256, 31 A. 297; Goodrich v. Ferris, C. C., 145 F. 844, Id., 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914.

 This court has said in Taylor v. Betts, 59 Ariz. 172, 124 P.2d 764, 766: "There can be no question that as a general matter a judgment is res adjudicata as to every point decided therein and also as to every point raised by the record which could have been decided, the presumption being that all such points have been decided in support of the judgment rendered. Miller v. Kearnes, 45 Ariz. 548, 46 P.2d 638;

Fischer v. Hammons, 32 Ariz. 423, 259 P. 676."

See to this same point Snyder v. Betsch, 59 Ariz. 535, 130 P.2d 510; Miller Rubber Co. of New York v. Peggs, 60 Ariz. 157, 132 P.2d 439; Harambasic v. Barrett & Hilp & Macco Corp., 58 Ariz. 319, 119 P. 2d 932; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Greenwood v. Murray, 26 Minn. 259, 2 N.W. 945.

 The present suit is indubitably a collateral attack on the judgment. Freeman on Judgments, 5th Ed., Vol. 1, p. 607, et seq.; Tube City Min. & Mill. Co. v. Otterson, 16 Ariz. 305, 146 P. 203, L.R.A. 1916E, 303; Henderson v. Towle, 23 Ariz. 377, 203 P. 1085; Le Baron v. Le Baron, 23 Ariz. 560, 205 P. 910; Dockery v. Central Arizona Light & Power Co., 45 Ariz. 434, 45 P.2d 656.

 Certainly there is a sound public policy which has required the establishment of the rule that judgments import verity, and may not be collaterally attacked, stemming not from any conception that they must always be free from error, but from the same motivation that led to the establishment of courts themselves, viz., the bringing of differences to a peaceful trial and settlement. One of the oldest reported cases puts it in this apt language: "The judgment of the law, like the hand of death, puts an end to all strife." Swan v. Scott, 11 Serg. & R., Pa., 155. In the

multitude of cases bearing upon this point there has appeared no more apt exposition of the reason for the rule, nor one better couched in the language of common sense than one appearing in our Arizona Reports: "There appear to be a few cases permitting an attack of that character [a collateral attack upon a judgment, added], but the great weight of authority is to the contrary. If a judgment may be attacked on this ground in an independent proceeding of the character of this one, so in turn may the judgment in the second proceeding be likewise attacked. No such multiplication of litigation is permissible, except where by some form of fraud or imposition, extrinsic to the issues on trial one party prevents the other from having a fair hearing." Dragoon Marble & Mining Co. v. McNeish, 28 Ariz. 96, 235 P. 401, 403.

The rule is not varied by the consideration that the judgment under attack may have been rendered upon a claim tainted with the vice of being contrary to public policy. Collister v. Inter-State Fidelity Building & Loan Ass'n, 44 Ariz. 427, 38 P.2d 626, 98 A.L.R. 1020; Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039.

The enactment of the legislation providing for declaratory judgments has not detracted from the rule that judgments are not subject to collateral attack. The act does not expressly or by implication authorize a court to entertain a proceeding to determine any questions of the construction or validity of a judgment or decree of a court of competent jurisdiction, or to declare the rights or legal relations of interested parties thereunder.

"Questions already adjudicated by a court having jurisdiction of the subject matter and the parties cannot thereafter be the subject, between such parties and their privies, of an actual controversy within the meaning of this term in the Declaratory Judgments Act. The act is not intended to elucidate or interpret judicial decrees or judgments already entered or to modify or declare rights thereunder. Hence, a declaratory judgment proceeding is not an appropriate method of obtaining the vacation of a judgment; it would be entirely beyond the purpose and scope of the statute as well as contrary to fundamental principles for a court to attempt, in such a proceeding, to review and determine the validity of a judgment of a court of coordinate jurisdiction. * * *" 16 Am. Jur., Declaratory Judgments, Section 23, p. 295.

Similar language appears in Anderson on Declaratory Judgments, Sec. 219, p. 629. It is made more specific in Sec. 292, p. 103 of the 1942 supplement to the same work. Borchard, in his second edition agrees in comparable language, p. 342. See also Valley Nat. Bank v. Hartford Acc. & Indem. Co., 57 Ariz. 276, 113 P.2d 359. In the second case of the same title, 60 Ariz. 286, 136 P.2d 458, I think the court did not recede from its earlier holding, but in an

action at law granted relief upon the premise that an ex parte probate order was void as being beyond the competence of the judge to make it.

In other jurisdictions there are cases supporting the text as above quoted from Am. Jur. and cited in Anderson and in Borchard. See Pennington v. Green, 152 Kan. 739, 107 P.2d 766; Back's Guardian v. Bardo, 234 Ky. 211, 27 S.W.2d 960. In Ferree v. Ferree, 273 Ky. 238, 115 S.W.2d 1055, the court used language in referring to the subject very like, in its practical nature, that used in the Dragoon Marble & Mining Co. case as above quoted. Grooms v. Grooms, 225 Ky. 228, 7 S.W.2d 863; Mitchell v. Bagot, 48 Cal.App.2d 281, 119 P. 2d 758; Howard v. Bennett, 53 Cal.App.2d 546, 127 P.2d 1012. In Nebraska the court has said: " * * * It (action for declaratory judgment, added) was not intended as a substitute for a new trial or appeal; or as a method of destroying a proper exercise of power in a former action; or as authority for a second trial by the same parties on identical issues in different forums; or as justification for an unnecessary decision; or as approval of collateral attacks on former adjudications. * * *" Phelps County v. City of Holdrege, 133 Neb. 139, 274 N.W. 483, 484.

With these reasonable and practical views it is wholly logical to concur.

■ The various propositions in support of the correctness of the ruling below are so fully documented with apt citation of authority in the brief that the difficulty here has not been in distinguishing or appraising the cases, but in keeping down to a reasonable length a statement of their rules.

The judgment of the trial court being in all ways correct, it is affirmed.

STANFORD, C. J., and LA PRADE, J., concur.

Justice UDALL having presided in the trial court, the Honorable Henry C. KELLY, Judge of the Superior Court of Yuma County, was called to sit in his stead.