[Civ. No. 20690. Second Dist., Div. Three. Apr. 18, 1955.]

Estate of CHARLOTTE S. SMYTHE, Deceased. NEAL D. IRELAND et al., Respondents, v. PACIFIC HOME et al., Appellants.

Roland Maxwell, Paul H. Marston and Richard W. Olson for Appellants.

Wendell P. Hubbard for Respondents.

VALLÉE, J.—Appeal from the decree of distribution in the estate of Charlotte S. Smythe, who died testate. The problem is the proper interpretation of the dispositive paragraph of her will.

The provision of the will in question reads:

"All that I possess I give and bequeath to this same RUTH SMYTH for her during her life time, as she may need or see fit to use. If, upon her death, any of my estate remains, it is my will that such remainder be divided equally through her will between PACIFIC HOME a California Corporation in Los Angeles,, where I now reside, and the Church of the Messiah, of which I am now a Member."

The court decreed that the estate be distributed to Ruth Smyth in fee, unconditionally, without restriction or limitation. Pacific Home and Church of the Messiah appeal. They contend the will bequeathed and devised an estate for life to Ruth Smyth with a right of use, and the remainder to them. Ruth Smyth contends she took a fee-simple estate in all property of the testatrix, that the disposition to her is absolute, and that the attempted disposition to appellants is inconsistent with the absolute disposition and is therefore void.

█ It is trite to say that the intention of the testator is the polar star that must guide in the interpretation of a will to which all other rules must yield. (Prob. Code, § 101; *Estate of Salmonski*, 38 Cal.2d 199, 209 [238 P.2d 966].)

█ The question is to be dealt with by reading the will as a whole and determining the intent therefrom. (*Estate of Northcutt*, 16 Cal.2d 683, 689 [107 P.2d 607].)

█ A life estate is an estate whose duration is limited to the life of the person holding it or of some other person. (16 Cal.Jur. 366, § 2.) █ "It is not an essential requisite to the giving of a life estate, that it be expressly declared

to be such, nor that the term 'life estate' shall be used. The intention can as well be manifested by other words, referring to the estate conveyed and describing its characteristics, and if by that means the intention to vest a life estate, only, is shown, it will be as effectual as if it were expressly so stated." (*Burnett* v. *Piercy*, 149 Cal. 178, 192 [86 P. 603].)

▆ Where an estate is devised in fee, a gift over of what is left or not disposed of by the first taker is void. This rule, called the power rule, has no application if the estate of the first taker is a life estate. (See cases collected 17 A.L.R.2d 38.) ▆ A life estate with power to use and consume part or all of the principal for specified purposes and a limitation over of the remainder on termination of the life estate has long been recognized in this state. (*Lord* v. *Atchison*, 12 Cal.2d 681, 686 [87 P.2d 346].) Such power of absolute disposition, annexed to a life estate, does not enlarge that estate into an estate in fee. (*Adams* v. *Prather*, 176 Cal. 33 [167 P. 534]; *Luscomb* v. *Fintzelberg*, 162 Cal. 433 [123 P. 247].) ▆ The rule in this state, in accord with the majority view, is that where an estate for life with remainder over is given with a power of disposition in fee of the remainder annexed, the limitation for the life of the first taker will control and the life estate will not be enlarged to a fee notwithstanding the power of the life tenant to dispose of the fee. (*Morffew* v. *San Francisco & San Rafael R. Co.*, 107 Cal. 587 [40 P. 810]; *Luscomb* v. *Fintzelberg*, *supra*, 162 Cal. 433.)

In *Hardy* v. *Mayhew*, 158 Cal. 95 [110 P. 113, 139 Am.St. Rep. 73], the decree distributed the property to Mayhew "for his use, during his natural life, and on his death the unused portion of said sum to" children and a grandchild. The court said (pp. 99-103):

"Herein was clearly a distribution to Judge Mayhew of a life estate simply, an estate limited by express terms to his natural life, with the power of disposing of the principal, even to the extent of entirely consuming it, in such ways as might be consistent with his 'use' thereof, and a distribution of the remainder to plaintiff and the three children in equal shares.

". . . The distinction between the case of an intended gift of an absolute title to one with an attempted gift over of simply 'what remains unexpended' by the donee at the time of his death, where the gift over is void because in derogation of the absolute fee given the first taker, and the case of a

gift of a life estate with a power of disposition for a particular purpose only, with an express gift over of what remains unused for such purpose, is recognized by all the authorities. The cases supporting our conclusion are numerous, and a few of these may properly be referred to. . . . In *Burleigh* v. *Clough*, 52 N.H. 267 [13 Am.Rep. 23], the gift was of all the estate to the wife to her use and disposal during her natural life, and what is remaining at her decease, undisposed of by her to others named. It was held that the wife took only a life estate, with power to dispose of such of the property, even to the extent of the whole, as her needs, her comfort, or her gratification should demand, and that the provision as to a gift over created a *vested* remainder. . . . In *Eubank* v. *Smiley*, 130 Ind. 393 [29 N.E. 919], a gift to the wife of all the husband's property 'to do with and dispose of after my decease as she may think best' and at decease of the wife, the *real estate* to be equally divided among my heirs, was held to give only a life estate in the real estate. . . . It appears to be settled by the overwhelming weight of authority that the mere fact that the first taker is invested with the power to dispose of or consume the whole of the property for certain purposes does not invest him with the absolute ownership thereof and render the gift over void, where taking the whole instrument together it is concluded that the intent was to give only an estate for life, with limited power of disposal or consumption. As expressly indicated in some of the decisions referred to above, the interest of the remaindermen expressly designated, in this case Chas. P. Mayhew, Frank J. Mayhew, Mary E. Phipps, and plaintiff, was a vested remainder. Neither the person in whom nor the event upon which it was limited to take effect was in any degree uncertain. (Civ. Code, §§ 693 to 695.)''

(See also *Luscomb* v. *Fintzelberg, supra,* 162 Cal. 433, 441.)

The court in *Estate of Tooley,* 170 Cal. 164 [149 P. 574, Ann.Cas. 1917B 516], construed this will:

''I give all my property at my death to my daughter Logan Mattie Tooley.

''If at her death she has neither husband or children I desire any property that may be left divided equally among my sisters and brother.''

It was held that on the death of the daughter, leaving neither husband nor children, the estate passed to the sisters and brother of the testatrix and hence was not subject to the testamentary disposition of the daughter.

In *Adams* v. *Prather,* 176 Cal. 33, the court said (p. 37 [167 P. 534]):

"While the first dispositive clause of the will, namely, 'I give all the property of which I die possessed to my husband Thomas Prather. . .,' is clear and, taken alone, admits of no construction other than that an absolute disposal of her estate to him was intended, the second dispositive clause, to wit, 'Upon the death of my husband the said Thomas Prather one-half of the unexpended portion of my estate bequeathed to my husband to be given to my niece Julia Adams . . ., the other one-half to be given to the surviving daughters of my brother Edson F. Adams in equal shares,' is equally clear and distinct. (*Estate of Tooley,* 170 Cal. 164 [149 P. 574, Ann.Cas. 1917B 516].) Hence, unless irreconcilable with the first clause, it should be construed in relation therewith. Read in connection with the first clause, it is clear that in using the words, 'unexpended portion of *my estate,*' she had reference to that portion of *her estate* which should remain unconsumed by her husband at his death, and this part of her estate so remaining was, by the terms of the will, addressed not to her husband as legatee, but to the executor of her will, 'to be given' in the manner provided by law to her nieces. . . . [P. 40.] The intention of Julia P. A. Prather as expressed in her will was to give her estate to her husband for his unrestricted use and consumption during the term of his natural life, with power to control, manage, exchange, sell, and dispose of the same, limited, however, in the exercise of such power to the purpose for which the property was given him, viz., his use and consumption thereof. While as to the property, persons dealing with him in good faith would be entitled to protection as fully and to like extent as though he were absolute owner in fee thereof, *he could not as of right in his lifetime give it away or make it the subject of testamentary disposition at his death.*"

In *Colburn* v. *Burlingame,* 190 Cal. 697 [214 P. 226, 27 A.L.R. 1374], the provisions of the will as stated by the court were these (p. 698):

" 'I Give, Devise and Bequeath to My beloved Wife Leora I. Colburn the entire handling and control of any and all of my real estate and any and all my personal property of any and every name nature or kind—wheresoever situate—To have and to hold, occupy or use the whole or any part thereof in such Manner as may in her judgment seem best for her own individual benefit and support without any hindrance on the

part of any person or persons wholly confiding in and believing my .beloved wife will not allow said property to depreciate or go to waste.' ''

The third paragraph then gives the estate to the mother of the deceased and the mother of the defendant in the event of the latter's death. She, however, has survived them, which brings into operation the fourth paragraph of the will, which is as follows:

'' 'It is my wish and will and I do so direct that in case of the decease of my mother Mrs. Eliza A. Colburn and the mother of my beloved wife Mrs. P. M. Westbrook and my beloved wife Leora I. Colburn shall yet be living, then and in such case I Give, Devise and Bequeath any and all my real estate and any and all personal property of any and every name and nature or kind wheresoever situate at the time of the decease of my beloved wife Leora I. Colburn. To my Brothers then living and to my beloved wife's sister Mrs. Dora L. Nehrbass jointly and severally the remainder of my estate Share and Share alike.' ''

The court held (p. 700):

''That the provision made for the defendant [the wife] by said will constituted a life estate, although with power to consume the principal of the estate, we have no doubt. By paragraph 2 the entire estate is given over to her to be used for her individual benefit and support, and at her death the remainder, that is, the part of the estate unconsumed by her, is, by paragraph 4, given to the testator's brothers and sister-in-law.''

The court then referred to and quoted from *Hardy* v. *Mayhew, supra,* 158 Cal. 95, and *Allen* v. *Hirlinger,* 219 Pa. 56 [67 A. 907, 123 Am.St.Rep. 617, 13 L.R.A.N.S. 458], and concluded (p. 702):

''So in the case at bar, the provisions of the fourth paragraph of the will, giving to the plaintiffs what is left of the estate upon the death of the defendant, make it quite clear that the testator intended to give to his wife only a life estate.''

In *Estate of Thompson,* 62 Cal.App. 493 [217 P. 127], the testatrix gave her daughter two-thirds of all her estate, and provided that in case the daughter died without issue such estate as remained should go to others. The daughter died without issue. It was held that only a life estate was given, and that the remaindermen were entitled to the amount unexpended by the daughter during her lifetime.

350

The will in *Estate of Mayne,* 28 Cal.App.2d 340 [82 P.2d 504], read:

"In case of my accidental departure of this life, I leave all my property to my husband, Frank K. Mayne.

"To be carefully kept and finally divided equally between Frances and Walter—if any remains after Frank's passing on."

The superior court, sitting in probate, distributed the estate to the surviving husband for life, and on his death "the unused portion thereof" to Frances and Walter. On review it was contended that the will gave a fee-simple estate to the husband. It was held that it could not be doubted that what the testatrix intended was to give a life estate to her husband with remainder over to Frances and Walter.

The will before the court in *King* v. *Hawley,* 113 Cal. App.2d 534 [248 P.2d 491], read:

"I devise and bequeath all my property to my sister, Mrs. Ida M. Graves . . . and that she may use all the proceeds of my estate for her comfort and support; but that whatever may be left of my estate at her death shall go to James Woodward King of Sacramento, California, and to his heirs."

It was contended that the will devised a fee and not a life estate. The court held that there was vested in Ida Graves an estate for life with remainder over to King.[1]

We deduce the following principles of law from the foregoing authorities. ■ If the first taker is given a fee-simple estate it is obvious that a devise over is inoperative, but if the first taker is given a life estate with a power of disposition the devise over is effective. In other words, the validity of the devise over is dependent on the character of the estate vesting in the first taker, and if an estate is given for life an added power of disposition does not enlarge the estate into a fee simple. The rule gives effect to the intention

[1]See also *Estate of Rath,* 10 Cal.2d 399, 404 [75 P.2d 509, 115 A.L.R. 836]; *Mitchell* v. *Bagot,* 48 Cal.App.2d 281, 284 [119 P.2d 758]; *Estate of Bjors,* 103 Cal.App.2d 361, 371 [229 P.2d 468]; *Mead* v. *Welch,* 95 F.2d 617, 619; *Johnson* v. *Johnson,* 51 Ohio St. 446 [38 N.E. 61]; *Seaward* v. *Davis,* 198 N.Y. 415 [91 N.E. 1107-1108]; *Chesnut* v. *Chesnut,* 300 Pa. 146 [151 A. 339, 75 A.L.R. 66]; *In re Dickinson's Estate,* 209 Pa. 59 [58 A. 120]; *Hambright's Appeal,* 2 Grant Cas. (Pa.) 320; *Voncannon* v. *Hudson Belk Co. of Asheboro, N. C.,* 236 N.C. 709 [73 S.E. 2d 875, 877]; *Rock Island Bank & Trust Co.* v. *Rhoads,* 353 Ill. 131 [187 N.E. 139, 143]; *Hutchinson's Estate* v. *Arnt,* 210 Ind. 509 [1 N.E.2d 585, 108 A.L.R. 530]; *Forsey* v. *Luton,* 39 Tenn. (2 Head) 183; Anno: 36 A.L.R. 1177, 1180; 76 A.L.R. 1153; 17 A.L.R.2d 34; 9 Ann.Cas. 947; Ann.Cas. 1912B, 424; Ann.Cas. 1916D, 400; 39 A.S.R. 73, 82.

of the testator and regards specific terms such as "for life," "during his or her natural life," etc., as showing the estate the testator intended to give. ▮ Where a bequest or devise is made in ordinary language, without words of inheritance or perpetuity, but in terms standing alone to carry the absolute or fee interest, and followed by a limitation over of the property not disposed of by the first taker, the first taker takes a life estate only with power of disposal. (Cases collected 17 A.L.R.2d 135.) A limitation over of such property as is left undisposed of at the death of the first taker is usually regarded as not contemplating an absolute power of disposition. (*Idem.* 59, 64.) The fact that a qualified or limited power of disposal as for use is expressly vested in the first taker argues that he is given less than the fee. (*Mitchell* v. *Bagot,* 48 Cal.App.2d 281 [119 P.2d 758].) An express vesting of power of disposition in the first taker argues that he was not intended to have the fee. The circumstance that a gift over covers all property not disposed of by the first taker by act *inter vivos* argues that the intent was to give a life estate only. (Cases collected 17 A.L.R.2d 83.)

The power of appointment given to Ruth Smyth does not authorize an appointment by her beyond the class designated in the will of decedent, i. e., beyond Pacific Home and Church of the Messiah. (*In re Johnson's Estate,* 276 Pa. 291 [120 A. 128, 129].) Nor does it enlarge or add anything to the life estate. (Rest., Property, § 323, Comment b; *Keays* v. *Blinn,* 234 Ill. 121 [84 N.E. 628, 630, 14 Ann.Cas. 37]; *Collins* v. *Wickwire,* 162 Mass. 143 [38 N.E. 365, 366]; *Long* v. *Waldraven,* 113 N.C. 337 [18 S.E. 251].) ▮ A power to will property to certain specifically named persons is special or particular and not general or discretionary. (*O'Neil* v. *Ross,* 98 Cal.App. 306, 317 [277 P. 123].) ▮ The power with respect to the remainder is coupled with a mandatory duty to exercise it. (See 72 C.J.S. 430, § 33.) The testatrix said: "it is my will that such remainder be divided equally through her [Ruth Smyth's] will" between appellants. ▮ A special and mandatory power is obligatory on the donee and is raised in equity as a trust or a power in trust, and the execution of that power may be enforced in equity in the same way as a trust. (*O'Neil* v. *Ross, supra,* p. 318; 72 C.J.S. 435, § 38; 465, § 55.) ▮ Unless the donor has provided for a gift in default of appointment, if the donee fails to exercise the power the objects of the power will share

equally in the gift provided the donor has not evidenced a contrary intention. (Burby on Real Property, 2d ed., 608, § 329.) Underhill says:

"[T]he remedy in equity for the non-execution of a mandatory power which is equivalent to a power in trust is the same as for the enforcement of a trust. The execution of a power in which third persons are interested will be compelled in equity. And equity will not permit the negligence of the donee of such a power, his mistaken understanding of his duties, or his accidental failure to execute the power, to prejudice those who are to benefit by its exercise. The power will be regarded as a trust, and in case the donee has not performed his duty the court will perform it for him in order that the rights of the beneficiaries may be protected." (2 Underhill on the Law of Wills, 1170, § 802.) ▉ The object of the court in exercising the power in trust is to carry out the intention of the testator. (*Idem.*)

In the case at bar there is a clear intention on the part of the testatrix to bequeath and devise a life estate only together with a limitation over of what remains. The duration of the estate given to Ruth Smyth is stated. The first language gives the estate to her "for her during her life time, as she may need or see fit to use." This language is not inconsistent with a remainder to appellants. Standing alone, it does not carry an estate in fee to Ruth Smyth. She is not given an absolute power of disposition. (Cases collected 17 A.L.R.2d 34, 57.) The language is sufficient to cut her interest down to a life estate. ▉ One to whom property is bequeathed or devised for use during life may not impair the principal, the word "use" standing alone indicating a use without impairment of the corpus. (*Hardy* v. *Mayhew*, 158 Cal. 95 [110 P. 113, 139 Am.St.Rep. 73]; 16 Cal. Jur. 373, § 10.) The gift over also serves to define the estate of Ruth Smyth as a life estate. The power of appointment is mandatory. The power to will what remains to appellants negatives the creation of a fee, for one does not dispose of property under a power if he is, in fact, the absolute owner of it. The words "If, upon her death, any of my estate remains, it is my will that such remainder be divided" between appellants limits the preceding phraseology and also shows that it is not to be construed as an absolute, fee-simple estate.

There can be no question but that the testatrix intended to make some provision for appellants and the will must be

construed with that fact in mind. The testatrix gave the estate to Ruth Smyth "during her life time." It is given to her "as she may need or see fit to use." She could not have the estate longer than she lived. After her death, if any of it remains unused it would necessarily go to somebody else. This contingency is provided for in the will by the statement that if, upon the death of Ruth Smyth, "any of my estate remains, it is my will that such remainder" go to appellants. This is an express limitation over of the balance which may remain unused at the time of the death of Ruth Smyth. It does not amount to a restriction on her use of the estate. If she consumes it all "as she may need or see fit to use" appellants get nothing. If she does not, they get what is left.

To construe the will as giving a fee to Ruth Smyth would be to say that the second sentence of the dispositive paragraph is wholly ineffectual, contrary to Probate Code, § 102, that a will is to be interpreted so as to give effect to every expression rather than so as to render any expression inoperative.

Respondent cites *Estate of Marti*, 132 Cal. 666 [61 P. 964, 64 P. 1071], *Estate of Farelly*, 214 Cal. 199 [4 P.2d 948], *Estate of Goldthwaite*, 140 Cal.App. 551 [35 P.2d 1050], *Estate of Cook*, 58 Cal.App.2d 376 [136 P.2d 338], and *Estate of Ferdun*, 91 Cal.App.2d 622 [205 P.2d 456], in support of her contention that the will gave her a fee-simple estate. They are not analogous. Each of them construed a will in which an absolute bequest or devise was followed by language such as "I desire," "as I may suggest," "would like to have her have," "I would like," and similar language. It was held that the language was merely precatory and not dispositive. In *Estate of Lawrence*, 17 Cal.2d 1, it is said (p. 7 [108 P.2d 893]):

"It has been stated frequently that when words of recommendation, request and the like are used in direct reference to the estate, they are *prima facie* testamentary and imperative, and not precatory. While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor. All expressions indicative of his wish or will are commands."

Here the expression is a command. The testatrix said, "If, upon her death, any of my estate remains, *it is my will*." (Italics added.)

We hold that the will does not give Ruth Smyth a fee-simple estate; that it gives all of the property of the deceased to her for life with power of consumption "as she may need or see fit to use," together with a mandatory power of appointment to be exercised by her will of the remainder to appellants. Any other construction of the will would do violence to the manifest intention of the testatrix.

Reversed.

Shinn, P. J., concurred.

Wood (Parker), J., did not participate.